WILLIAM DAVIS, Plaintiff in Error, v. JONATHAN H. RANSOM, and JOSHUA H. BATES, Defendants in Error.

### ERROR TO OGLE.

An objection to the testifying by a witness, should appear in the bill of exceptions; it cannot be stated for the first time in this court.

A chattel mortgage, which the court had declared void as to creditors, may be offered in evidence as between the parties to it.

A demurrer to pleas may well be disregarded, after an issue of fact has been made upon them. A party who goes to trial, without calling up his demurrer, cannot urge his own neglect to his advantage.

An execution offered in evidence which appears by the bill of exceptions to have been without a seal, was properly excluded.

THIS was an action of replevin brought by Ransom and Bates in the Ogle Circuit Court against Davis, to recover a stock of goods from the possession of the defendant, and they file their *plaint*, sworn to by Henry A. Mix, in which he swears " for and in behalf of " the plaintiffs, that the plaintiffs are the owners of the goods, as mortgagors under a certain chattel mortgage, made by one Edmund P. Sexton to them, hereinafter set forth.

Plaintiffs file their security for costs, made and executed by H. A. Mix, and also their replevin bond, made and executed by Ransom and Bates, " by H. A. Mix, his attorney hereto duly authorized," and also executed by Henry A. Mix, as security.

The replevin writ is returned by the sheriff, as executed, by replevying and delivering the goods into the possession of plaintiffs' agent, H. A. Mix.

Plaintiffs, by H. A. Mix, as their attorney, file their declaration in the *detinet*.

The defendant claimed to hold the goods, as the custodian of the United States marshal, by virtue of a levy under an execution from the United States Court against the goods of said Sexton.

The pleadings are stated in the opinion of the court.

On the trial, the plaintiffs introduced *Edmund P. Sexton* as a witness, by whom they proved the making and delivery of the instrument in writing, of which the following is a copy, viz.:

" Whereas, I, Edmund P. Sexton, of the village of Oregon, county of Ogle, and State of Illinois, am justly indebted to James G. Manlove in the sum of six hundred and forty-four dollars; to J. H. Ransom & Co., about the sum of nine hundred and sixty-six dollars; to Bates, Taylor & Co., about the sum of six hundred dollars; to Cummings, Collins & Seaman, about the sum of twenty-four hundred dollars; to Hoppick & Moody, about five hundred dollars; to Bridge & Shepherd, the sum

of one hundred and eleven dollars; to Levee & Lauendick, four hundred and seven dollars; Lyman Cook & Co., one hundred and twenty-nine dollars; Blume, Palmer & Steuelt, three hundred and thirty dollars; Griffin & Titus, five hundred and two dollars. And whereas, I am unable to pay or discharge said debts without further time, and being desirous to secure the payment of the same, therefore, this indenture witnesseth, that I, Edmund P. Sexton, party of the first part, and J. H. Bates, and J. H. Ransom, of the city of New York, parties of the second part, that the said party of the first part being so justly indebted to the several persons so named, in the several sums mentioned above, amounting to the sum of six thousand two hundred and ninety-seven dollars, for and in consideration of the same, and for the purpose of securing the payment thereof, have granted, bargained, sold and mortgaged, and by these presents, do grant, bargain, sell and mortgage, unto the said J. H. Bates and J. H. Ransom, parties of the second part, all the goods, chattels and personal property belonging to the party of the first part, and now in his possession in the building known as Entyre's building, that part now occupied by the party of the first part, in the village of Oregon, county of Ogle, and State of Illinois, said property to include all the merchandise and stock in trade, consisting of thirty pieces of broadcloths, cassimeres, and satinets; thirty pieces of ginghams; three hundred pieces of prints; thirty pieces of alpacas; twenty pieces of dress goods; twenty pieces of ribbons; fifty pieces of shirting; a quantity of sheeting; twenty pieces of cambric; four pieces of velvet; five pieces of silks; sixty over and under coats; thirty pair of pants; thirty vests; twelve cases of boots; one hundred pair of shoes; fifty pair of brogans; a quantity of groceries; a quantity of hardware; a quantity of crockery; together with all and every article of merchandise of whatever kind and description now of said stock; to have and to hold all and singular the said goods, wares and merchandise, hereinbefore granted, bargained and sold, or mentioned, or intended so to be, unto the said parties of the second part, their executors, administrators and assigns, to the only proper use and benefit of the said parties of the second part, their executors, administrators and assigns, forever. Provided always, and these presents are on this condition, that the said party of the first part, his executors or administrators, shall and do well and truly pay, or cause to be paid, unto the said parties of the second part, their executors, administrators or assigns, the several sums of money due to each of said persons before mentioned, with seven per cent. interest thereon, to be paid as follows, to wit: the said sum specified to be paid first to J. G. Manlove, the said sum second to be paid

to J. H. Ransom & Co., the said sum specified third to Bates, Taylor & Co., and fourth, to pay the others, the other said several sums *pro rata*, hereinbefore mentioned, the payment of all said several sums to be paid within fifteen months from the date, or sooner, if the proceeds of sale of said goods, wares and merchandise, will enable the party of the first part to do so. It is hereby provided, by and between the parties to this mortgage, that the said Edmund P. Sexton, party of the first part, shall have and retain possession of all the goods, wares and merchandise hereby mortgaged, for the purpose of selling and disposing of the same in the usual course of trade, as heretofore followed, to sell for ready pay only, for the purpose of paying and discharging the said several debts as before mentioned, and for no other purpose; and that the said party of the first part, shall well and faithfully pay over to the parties of the second part, all the money and avails of the sales, every thirty days after the date hereof, or oftener if he choose so to do, for the purpose of paying said debts, as before mentioned; and it is also provided and agreed by the parties to the mortgage, that the party of the first part shall not remove said goods and merchandise from the village of Oregon, where they are now situate, without the consent of the parties of the second part, their agent or attorney. And it is also provided and agreed between the parties to this mortgage, that if default be made in the payments as aforesaid, or in case the party of the first part neglects to pay over, as herein provided, the avails of the sales of said goods and merchandise to the said party of the second part, their agent or attorney, as before provided, or in case the said party of the first part shall do any thing or act, whereby, in the opinion of the parties of the second part, their agent or attorney shall consider this security in danger, then and in that case it shall and may be lawful for the said parties of the second part, their agent or attorney, or assigns, executors or administrators, shall have the right to take possession of the said goods and merchandise hereby mortgaged, (and all the goods and merchandise which may be hereinafter purchased by the party of the first part,) wheresoever the same may be or can be found, and sell the same at best price for cash which can be obtained, and from the sales pay and discharge the said several sums before mentioned, which may remain unpaid or unsatisfied; and in case there shall be more than sufficient to pay the same, the remainder shall be returned to the said party of the first part, after paying all costs and charges in the premises. It is also further provided, that in case the party of the first part shall well and faithfully perform the conditions of this mortgage on his part, pay and discharge the said several debts as before

mentioned, at the time and in the manner before specified, then these presents and every matter and thing herein contained, and this mortgage, shall be canceled and delivered up.

In witness whereof, the party of the first part has hereunto set his hand and seal, this fifth day of our Lord one thousand eight hundred and fifty-five.

[Signed]    EDMUND P. SEXTON. [SEAL.]
Witness,    DAVID S. PRIDE.

This mortgage was acknowledged before me by Edmund P. Sexton, this 5th day of March, A. D. 1855.

DAVID S. PRIDE, *J. P.* [SEAL.]

Which said instrument was recorded in the recorder's office, Ogle county, March 5, 1855. And thereupon the said plaintiffs offered said instrument in evidence ; to the reading of which to the jury, defendant objected, which objection was overruled, and said instrument was allowed to be read to the jury ; to which ruling, defendant excepted.

Plaintiffs further proved by said Sexton, that at the time of the making said instrument in writing, E. S. Smith, the attorney and agent of the plaintiffs, took possession of the goods described therein for the plaintiffs, and employed witness, as provided for in said instrument, to sell said goods, directed witness to get out handbills, and before the handbills were got out, the goods were levied upon by a person purporting to be a deputy marshal; that at the time said writing was made, and also at the time of the levy by said marshal, the goods were in a store in Oregon, Ogle county ; that witness was a merchant selling goods in said store at the time of making said writing; that after making the same, witness continued to sell goods, and was in possession of the same till they were levied on by the marshal ; that he did not change his sign after making said writing ; that after the making said instrument, and before the goods were levied on by said marshal, witness sold some of the goods in the writing mentioned, and paid proceeds to H. A. Mix, the attorney of the plaintiffs ; that the plaintiffs resided in New York ; that after the said instrument was made, witness replenished said stock of goods by purchases made by witness of pedlars ; that the goods in the writing mentioned were the same goods taken by the deputy marshal, and by the marshal delivered to Davis, the defendant, and the same replevied in this suit; that the proceeds of the sales paid over to Mix, was $644. Witness said that Smith took possession of the goods about the middle of April.

The said plaintiffs, further to prove the issue on their part, produced and caused to be sworn, *Henry A. Mix,* and the

defendant, by his counsel, objected to said Mix being examined as a witness, which objection was overruled by the court, and the defendant did then and there except to the ruling of the court in overruling the said objection, and allowing said Mix to be examined as a witness. Plaintiffs proved by said Mix that the defendant was in possession of the goods at the time they were replevied, and that, as the agent of the plaintiffs, he (Mix) demanded the goods of the defendant before this suit was commenced.

The plaintiffs here closed their evidence, and the defendant, to prove the issue on his part, produced and offered in evidence, a writ of execution from the United States Court, Northern District of Illinois, in favor of Thomas A. Cummings *et al.*, against the property of said Sexton, dated April 26, 1855, for $2,452.70, and directed to the marshal of said district. Also the levy by virtue of said execution, made April 27, 1855, by Harry Wilton, United States Marshal, by Michael Regan, deputy, on the said stock of goods, with inventory thereof in detail, and the return of said execution, setting forth that on the 10th day of May, 1855, the sheriff of Ogle county took the stock under replevin writ—copies of which said execution, levy and return, are given in full in record. To the reading of which said execution, levy and return, to the jury, the plaintiffs did object; which objection was sustained by the court; to which ruling of the court in refusing to allow said execution, levy and return to be read to the jury, the defendant excepted.

This was all the evidence in the case.

Thereupon the plaintiffs, by their counsel, asked the court to give to the jury the following instruction, to wit: " The plaintiffs ask the court to instruct the jury that the chattel mortgage offered in evidence, if the plaintiffs took possession under it, is good and valid as between plaintiff, the maker, Sexton, and in the absence of all other proof, entitles the plaintiffs to recover." Which said instruction the court gave; to the giving of which instruction, the defendant by his counsel, excepted.

The jury rendered a verdict for the plaintiffs.

Defendant entered a motion for a new trial, which was overruled. Defendant assigns the following errors on the record:

The court erred in admitting the instrument in writing, or chattel mortgage, to be read to the jury.

The court erred in allowing Henry A. Mix to be sworn as a witness before the jury.

The court erred in allowing the case to be tried without disposing of the defendant's demurrer.

The court erred in allowing the case to be tried without an issue joined on defendant's second and third pleas.

The court erred in rejecting from the jury the evidence offered by defendant.

The court erred in giving the plaintiff's instruction to the jury.

The court erred in overruling motion for new trial, because *First*, The verdict is against the law, and *Second*, The verdict is against the evidence.

G. W. THOMPSON, C. C. BONNEY, and M. P. SWEET, for Plaintiff in Error.

SMITH & DEWEY, for Defendants in Error.

BREESE, J. The points made by the affidavit, question, first, the propriety of allowing Mix to be sworn as a witness, as he had signed a bond for costs in the cause, and also was the security on the replevin bond. In answer to this, it is sufficient to say, these reasons for objecting to him as a witness were not urged in the court below. The bill of exceptions simply states Mix was objected to when called as a witness, but the grounds of objection were not stated. They cannot be stated in this court for the first time. By alleging the grounds of objection in the court below, opportunity would be afforded the party to substitute other security. It is too late now to make it.

That the court erred in admitting the chattel mortgage in evidence for the plaintiffs, because this court, in a former case, had declared it void, as against creditors, or third parties, is not so clear. The mortgage was valid as between the parties to it, and when offered as evidence the appellant was not shown to be a creditor, and entitled, by virtue of that position, to interfere with the property conveyed by the mortgage, or question the conveyance.

The third point made is, that the court erred in trying the cause while " our demurrer was undisposed of." There is much pleading shown in the record—it is quite voluminous. The defendant put in three pleas: first, *non detinet;* second, a judgment and execution in favor of Thomas A. Cummings and others, and a levy on the goods in question by one Regan, deputy marshal; and third, property in one Sexton. The plaintiffs joined issue on the first; replied to the second that the goods were their property, and not the property of Sexton; and the same to the third plea ; in both which issues were tendered to the country, and joined by the usual similiter, though not signed by the defendant's attorney. Afterwards, during the term, the court granted leave to plaintiffs to reply double to the defendant's pleas, and, as the record recites, " thereupon issue being

8

joined, the jurors of a jury came," etc., who returned their verdict. A motion was made for a new trial, and overruled.

At the October term, 1857, an order was made placing the cause upon the docket on the motion of defendant's attorney, who produced the order of this court remanding it, and the cause was continued. At the June term, 1858, the plaintiffs obtained leave to file a new replication, and under this leave filed a replication to the second plea, traversing the allegation that Regan was a deputy marshal, concluding to the country, and the similiter added; and, also, another replication traversing the allegation of the judgment as set out in that plea, concluding to the country, with the similiter added; and a replication, traversing the allegation of the execution, as set out in the plea, concluding to the country, with the similiter added.

At the October term, 1858, the defendant's counsel filed a demurrer to these several replications, and at a subsequent day of the term, the record states, " now comes on to be heard the plaintiffs' replications to the defendant's pleas herein, and after argument of counsel, and the court being fully advised in the premises, it is ordered that the said replications be overruled; and now to try the issue herein, came the jurors of a jury," etc. A verdict was rendered for the plaintiffs, and a motion for a new trial overruled, and bill of exceptions filed.

The clerk has, evidently, made up an incorrect record of the proceedings. It was the defendant's demurrer to the plaintiffs' replications which the court heard and overruled, probably for the reason that a demurrer could not be interposed after an issue of fact was made up. The demurrer was too late, and the court might well omit to notice it. But if it be not so, the party cannot now complain, as the record shows no joinder in demurrer, and that the defendant went into the trial voluntarily, without calling up, or noticing in any manner, his demurrer. It is too late now to urge this as ground of reversal. *Parkers* v. *Palmer*, 22 Ill. 489.

The fourth point made is not sustained by the record. Issues of fact appear to be made up on all the pleas, by adding the similiter without objection, which is usually done by the attorney tendering the issue, and is not always signed by counsel. The similiter may be put to a plea at any stage, by any party; and it is not error to proceed to trial without it. *Stumps* v. *Kelly*, 22 Ill. 140; *Walker* v. *Armour*, ib. 648.

The main point in the case is the fifth, which is, that the court erred in refusing to admit the execution and levy.

The facts are, that the execution, levy and return were all offered together, unaccompanied by any proof that the person making the levy and return was an officer authorized to make

them. Besides, the execution, as set out in the bill of exceptions, wants a seal, and is therefore void, and of no effect.

These papers being properly, as we conceive, rejected by the court, the defendant's case was cut up by the roots. Without this evidence, the defendant had no right to raise the question of fraud, or any other question affecting the right of possession of the party, from whom an unauthorized individual forcibly and without authority took the goods. There was no proof that the deputy marshal was such officer, either *de jure* or *de facto*, and not being such, the defendant could not justify under his acts or orders.

We see no error in the instructions, and must affirm the judgment.

*Judgment affirmed.*