## ABIAH G. WEBSTER *et al.*

*v.*

## ANNIE E. NICHOLS *et al.*

*Filed at Ottawa September 27, 1882.*

1. LANDLORD AND TENANT—*assignment of lease by lessee contrary to stipulation—voidable only, not void.* A clause in a lease that the same shall not be assigned without the written assent of the lessor, is for the benefit of the lessor only. It does not render the assignment, when otherwise made, absolutely void, but voidable only, at the option of the lessor or his representatives.

2. SAME—*waiver by landlord of cause of forfeiture, generally—and in case of improper assignment by lessee.* Any act done by a landlord, knowing of a cause of forfeiture by his tenant, affirming the existence of the lease and recognizing the lessee as his tenant, is a waiver of such forfeiture. The receipt of rent subsequently accruing, from the tenant by the landlord, is such an act, and the ground of forfeiture is thereby waived. So, the acceptance of rent from an assignee or purchaser of the lessee will preclude the lessor from insisting upon a forfeiture on the ground the assignment was made without his written assent, as provided in the lease.

3. SAME—*who regarded as an assignee.* Where the lessee of lots, after the erection of buildings on the same, sells the buildings together with the unexpired term at the same time, and the purchaser takes possession and rents out the lots, and pays the original lessor the rent reserved in his original lease, which is accepted, such purchaser, claiming through the same estate as his vendor, whom he succeeds, is to be regarded as an assignee of the lease.

4. SAME—*assignee of lease holding over, bound to same rent.* Where the assignee of a leasehold estate continues to occupy the premises after the term has expired, in the absence of any new agreement the law will bind him to the same terms by which he was bound under the expired lease.

5. SAME—*subsequent sale by lessee after a prior assignment.* Where a husband, as agent of his wife, purchased of the lessee of property the buildings placed thereon by the lessee, together with the unexpired term, as a single transaction, and the wife, on payment therefor, took possession of the property, and paid the rents to the lessor, the lessee can not afterward execute a bill of sale and assignment to the husband, so as to change in any manner the rights of the parties. The title having passed by the verbal sale and purchase, the lessee will have nothing to sell or assign to another.

6. SAME—*sale of unexpired term by parol, when good.* The holder of an unexpired term of years in land, may, by a parol agreement, pass the title or right of possession to the remainder of the term as well as the houses erected by him on the premises, when the sale is followed by actual possession, delivered and accepted in accordance with the terms of such agreement.

7. SAME—*covenants in lease running with the land, so as to bind assignee.* The covenant in a lease or deed to pay rent is one that runs with the land, and is binding on the assignee without his being specially named. So, covenants in a deed that extend to a thing *in esse,* parcel of the demise, and of benefit to the estate, run with the land, and bind not only the covenantor and his personal representatives by privity of contract, but also the assignee, though not named, and every other person who is in, of any estate created by or growing out of the original demise, by privity of estate.

8. SAME—*covenant for lien for rent binds assignee.* A covenant in a lease that the rent shall be a first and valid lien upon the buildings and improvements upon, or that may be put upon, the premises by the lessee, etc., and upon his or their interest in the lease and premises, is in the nature of security for the payment of rent. It is but an incident or accessory to the covenant to pay rent, and with such covenant to pay the rent it runs with the land, and is binding upon the assignee of the term.

9. SAME—*lien for rent, by contract—upon whom binding.* A lien may be reserved by stipulation in a lease, upon the lessee's interest in the demised premises, and upon the buildings and improvements thereon, to secure the payment of the rent, and such lien will be good and enforceable between the parties and all persons, except creditors and purchasers without notice, although the lease be not acknowledged and recorded.

10. Where the parties, by their contract, intend to create a positive lien or charge either upon real or personal property, whether it is then *in esse* or not, it will attach in equity as a lien or charge upon the particular property as soon as the assignor or contractor acquires title thereto, against the latter and all persons claiming under him, either voluntarily or with notice, or in bankruptcy.

11—104 ILL.

11. SAME—*lessee to pay taxes—right of lessor to charge penalty paid to redeem from tax sale.* By a lease of real property the lessee covenanted with the lessor to pay all the taxes levied upon the premises, and if the lessor should pay the same, to pay him that sum in addition to the rent reserved. Having failed to pay the taxes for certain years, the premises were sold, and the lessor, two years after such sale, paid $500 penalty to redeem: *Held,* that the lessor could charge only the amount of the taxes for which the premises were sold, and that the covenant did not require the payment of any penalty by the lessee.

12. SAME—*remedy to collect, as against assignee of lessee—jurisdiction in chancery.* A court of equity has no jurisdiction of a suit by a lessor of premises, the object of which is simply to obtain a decree against a legal assignee for the rent due from him, for the reason there is a complete remedy at law.

13. But when it is sought to enforce payment of rent of premises as against the assignee of the unexpired term by the sale of specific property, upon the ground that a lien for that purpose is reserved upon the property, —in other words, to enforce that lien, whether it is a legal or equitable one,— a court of equity will have jurisdiction.

14. . SAME—*in enforcing the lien—of the adjustment as to rents received by assignee from his sub-tenant.* Where a lessor has a lien upon the demised premises, and the improvements thereon or to be put thereon, and upon the lessee's interest in the lease, which is valid and enforceable against his assignee, who has sublet the premises, and pending a bill by the lessor against the assignee to enforce this lien for the rents due, rents coming to the assignee have been paid into court, the court, on establishing such lien, may require the money so paid into court to be applied to the rent due from the assignee. The right to control the income, etc., of the premises, follows as a sequence from the right to enforce a lien upon them.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. WILLIAM H. BARNUM, Judge, presiding.

This was a bill in equity by John Hutchinson, as guardian of the estate of Catharine W. Haven and Alice Haven, minors, and Annie E. Nichols, in her own right, against Abiah G. Webster, Christopher C. Webster, and Seth Gage, in which, among other things, it was alleged, that prior to the appointment of Hutchinson as such guardian, said Annie

E. Nichols was the guardian of said minors; that whilst she was guardian, she, in her own right and as guardian, made a lease to Seth Gage, bearing date March 20, 1868, leasing to Gage lots 9, 10, 11, 12 and 13, in Haven's subdivision of the south part of block 3, assessor's subdivision of the south-west fractional quarter of section 22, township 39, range 14 east, in Chicago, Cook county, Illinois, said lease being for a term of seven years, commencing May 1, 1868, at $1500 per year, payable quarterly, together with all water rates, taxes and assessments, except special assessments for permanent improvements; that if said Gage failed to pay the taxes and assessments, then Annie E. Nichols, lessor, might pay them, and all payments so made should be additional rent, and that the whole amount of rent should be a first lien on all the buildings that Gage might erect on the demised property, and when any rent should become due and remain unpaid for one day, then the lessor may sell, after giving due notice, all the buildings that may be erected on said leased property, and retain so much of the proceeds of such sale as to pay the defaulted rent; that it was further provided, that the lessor should have a first lien upon all the property of Gage as security for said rent, and that said lessee should not remove any buildings from said premises while rent remained unpaid, and at the expiration of said term of seven years said lease should be renewed for a further term of seven years, upon such terms as should be approved by the county court of Cook county, not exceeding six per cent on appraised valuation made at the expiration of the first term, together with water rates and taxes.   Said lease was signed by Annie E. Nichols and Seth Gage, and was binding on the heirs, executors, administrators and assigns of the parties signing; and that afterwards, Seth Gage, lessee, took possession and built ten dwelling houses on said demised premises, and during the first term of seven years all rents were paid by said Gage or assigns.

The bill further avers, that during the first term Gage sold the said houses to Christopher C. Webster, who took full possession, and Gage also assigned his lease to Christopher C. Webster, and that after said lease was assigned said Christopher C. Webster paid all the rents until October 1, 1877, but since that time both Gage and Christopher C. Webster refuse to pay rent; that at the end of the first term of seven years the lease was renewed in the way provided, and approved by the county court, at the same rental as provided for in the first lease. Avers, also, that Abiah G. Webster, who claims to be the owner of the houses, refuses to pay the rent; that said houses are rented for about $3500 per year; that the premises were sold for the taxes of 1877 and prior years, and the lessee paid a penalty of $500 to redeem; that there is now due for taxes and rent an aggregate sum exceeding $7000 and interest, and upon information and belief aver that Seth Gage and Christopher C. Webster are insolvent, and the buildings are not worth more than the rent due, and upon information and belief C. C. Webster and Abiah G. Webster will move off the buildings before the rent is paid. Then follows a prayer for an accounting, for an injunction from removing the houses, for the appointment of a receiver, and that a lien upon the buildings may be established for the amount due, and for general relief. The bill was subsequently amended, by leave of court, so as to show that the houses were sold by Gage to Abiah G. Webster, who took full possession, etc., and that the lease was assigned to her.

The joint answer of Christopher C. and Abiah G. Webster admits the making of the lease from Annie E. Nichols to Seth Gage for seven years, as alleged in the bill; that Gage took possession and built the ten dwelling houses, as alleged; that Christopher C. Webster, as the agent of Abiah G. Webster, his wife, bought from said Gage the said dwelling houses by him erected on the said premises, paying therefor

the sum of $35,000, and that Abiah G. Webster went into immediate possession of said houses, and leased said houses to various tenants, but they severally deny that any valid assignment was ever made to either of them, but aver that said lease provided that no assignment should or could be made without first obtaining the written consent of Annie E. Nichols, and that said Annie E. Nichols utterly refused to give her consent to an assignment, and would not recognize such defendants as her tenants, and gave them distinctly to understand that she accepted rent from them as Gage's sub-tenants, and not as her tenants. They deny that any renewal of said lease was ever made to them, but at the expiration of the first term of seven years Annie E. Nichols positively refused to make any lease with them, and the county court would not recognize them as in any way parties to said lease, and would not make any lease with them; whereupon such defendants refused to authorize defendant Gage to make any lease for them, and that in making said renewed lease Gage did not act as their agent, or for them, as said defendants told Gage they did not want any lease, and would not accept any, as they were utterly ignored, both in making the renewed lease or in fixing the amount of rental; and they deny that they have accepted any assignment of the renewed lease, and no assignment has been made to them, and aver that they have never complied with the terms of the renewed lease, as they were in no manner parties thereto. They aver that they had no notice at the time of purchasing said houses, or for a long time thereafter, that the first lease gave a lien upon said buildings for the rent or for the taxes; that they never saw the lease until after the purchase, but bought said houses upon representations made by letter by Albert Gage, the son of Seth Gage, and aver that neither the first lease nor the renewal was acknowledged or recorded. They admit that the houses rent for $3300 per year, but they do not know how much rent has

accrued under said lease, but deny that they should pay the rent or are liable therefor. They aver that a suit is now pending in the circuit court of Cook county, on the law side thereof, brought by the complainants against the defendant Seth Gage, to recover from said Gage the aforesaid amount of rent, which suit is still pending, etc. They deny that either is insolvent, but aver that the defendant Abiah G. Webster is now the owner of said houses, which are now insured for the sum of $15,000, and are worth more than the insurance, and that said Abiah is entirely responsible for all liability that has accrued or may accrue upon said lease.

By an amended answer, Abiah G. Webster alleged that the said houses belonged to her and were bought with her own money, and that as the owner of said houses she had never received any assignment of said lease, etc.

Seth Gage answered, admitting the averments of the bill regarding the lease, erection of houses, and the assignment of the lease to Christopher C. Webster, or the renewal of said lease, and averred that Annie E. Nichols refused to renew the lease to Christopher C. Webster. And afterwards the defendants, Christopher C. Webster and Abiah G. Webster, filed a joint amended answer, by leave of the court, alleging that all and every the matters in the complainants' bill mentioned are matters which may be tried and determined at law, and with respect to which the complainants are not entitled to any relief from a court of equity. The several answers were under oath, the oaths thereto not being waived by the bill. Proper replications were filed.

The decree finds the averments contained in the bill to be true, and further finds that the amount due from Abiah G. Webster and Seth Gage is $7489.59, which sum is itemized, as follows: Rent, eighteen months, to February 1, 1879, $2250; taxes for 1875, 1876 and 1877, paid by A. E. Nichols, $2855.35; penalty on taxes for 1875 and 1876, paid by A. E. Nichols, $500; taxes for 1878 and 1874, due prior to

bringing suit, and paid by the complainant John Hutchinson, September, 1879, $1356.78; interest on rents paid by A. E. Nichols, in September, 1878, $219.37; interest on rents paid by John Hutchinson, $40.67; interest on taxes paid, and on penalty, $268.42,—which said several sums, and which said total amount, to-wit, $7489.59, the court finds due, and that the same be paid within twenty days, and in default, then the money paid into court by order of court, for and on account of rents collected by the defendant Abiah G. Webster from the tenants in said dwelling houses, shall be paid over forthwith by the clerk of this court to said complainants, and applied as part payment on said amount found due, and the said dwelling houses and improvements upon said premises mentioned in the bill, or so much thereof as may be sufficient, after the application of said money, paid into court upon the order aforesaid, in part payment of said amount found due as aforesaid, to realize the amount so due the complainants as found by this court, and above mentioned, and interest, and also the costs of this suit, including the fees, disbursements and commissions on the sale herein mentioned, be sold at public auction to the highest bidder for cash, and that complainants may become the purchasers; that the master, out of the proceeds of the sale, shall retain his fees, disbursements and commissions, pay costs of suit, and out of the remainder pay complainants $8983.22, less such sum as shall have been paid complainants by the clerk of this court as part payment, as hereinbefore mentioned, with interest thereon from decree to sale, and if there is a surplus, the master shall bring it into court to await the further order thereof. The master shall execute a bill of sale, and defendants in possession shall give the purchaser possession. If the houses, and money in court, do not pay the claim, complainants shall have a deficiency decree against Seth Gage and Abiah G. Webster. Enjoins defendants from removing, selling or surrendering said houses. Further de-

creed that the order herein entered by this court for the payment of all rents collected by said C. C. Webster or Abiah G. Webster be kept in force and continued until the full payment to the said complainants by the said defendants of the amount herein found due on said lease, and the interest thereon, or until the sale of said dwelling houses. Decrees that Abiah G. Webster shall keep the houses insured for the benefit of complainants.

An appeal was prosecuted from this decree to the Appellate Court for the First District, and, on hearing in that court, the decree of the circuit court was affirmed. The present writ of error is prosecuted to reverse that judgment. The errors assigned are:

*First*—The court, under the evidence, had no equitable jurisdiction, and should have dismissed the bill for want of jurisdiction.

*Second*—The decree rendered in the case is contrary to, and is not sustained by, the evidence.

*Third*—The decree in said case is contrary to, and is not sustained by, the law.

*Fourth*—The said decree is contrary to, and is not supported by, the law or the evidence in said case.

*Fifth*—The Appellate Court for the First District erred in affirming the decree of the circuit court, and in not reversing the same, and remanding said cause upon the foregoing errors assigned in said Appellate Court upon the record, as prayed by said plaintiffs in error in said court.

Messrs. SWETT, BATES & HASKELL, for the plaintiffs in error:

The fact that there was a written assignment of the lease to Christopher C. Webster rebuts any presumption of law that may arise from circumstances tending to show the relation of landlord and tenant between the lessor and Mrs. Webster, such as payment of rent, and occupation and use of the houses. *Belford* v. *Terhune,* 27 How. Pr. 448; *Quackenbush*

v. *Clark*, 12 Wend. 555; Taylor's Landlord and Tenant, sec. 429; *Walters* v. *Northern Coal Mining Co.* 5 De Gex, M. & G. 629; *Cox* v. *Bishop*, 8 id. 815; *Robinson* v. *Roshar*, 1 Y. & C. 7; *Arkwright* v. *Colt*, 2 id. 4.

But if Mrs. Webster is a legal assignee of the lease, then the covenant that the unpaid taxes and rent should be a valid lien on the improvements to be placed upon the property *in futuro* does not bind the assignee, though named. Platt on Leases, 413, 414; Taylor's Landlord and Tenant, sec. 260; 1 Smith's Leading Cases, 137; *Farwell* v. *Dickinson*, 6 Barn. & Cress. 251; *Read* v. *Lawnse*, Dyer, 212 b; *Bally* v. *Wells*, 3 Will. 25; *Mayer et al.* v. *Pattison et al.* 10 East, 130; *Allen* v. *Culver*, 3 Denio, 284; *Dolph* v. *White*, 12 N. Y. 296.

To constitute a valid lien upon the improvements, which are personal property, the covenant must be in the nature of a chattel mortgage, and comply with all the requirements of the statute,—that is, be acknowledged and recorded. *Munsell* v. *Carew*, 2 Cush. 50; *Otis* v. *Sill*, 8 Barb. 111; *Lanphere et al.* v. *Lowe*, 3 Neb. 131.

A valid charge can not be made upon a thing not in existence. *Jones* v. *Richardson*, 10 Metc. 488; Bacon's Abridg. Grants D. 2; *Cadman* v. *Freeman*, 3 Cush. 309; 2 Kent's Commentaries, 703; *Head* v. *Goodwin*, 37 Me. 187; *Robinson* v. *Donelle*, 5 Maule & Selw. 228; *Chaynoworth* v. *Tenney*, 10 Wis. 400; *Chesley* v. *Josselyn*, 7 Gray, 490; *Rice* v. *Stone*, 1 Allen, 569; *Sheldon* v. *Connor*, 48 Me. 584; *Milliman* v. *Neher*, 20 Barb. 37; *McCaffrey* v. *Worden*, 62 id. 316; *Barnard* v. *Easton et al.* 2 Cush. 294; *Gardner* v. *McEwen*, 19 N. Y. 123; *Jones* v. *Richardson*, 7 Neb. 138.

The $500 penalty should not have been allowed in the decree, but only the amount of the taxes. The covenant to pay the taxes does not embrace the sum necessary to redeem from the tax sale.

The defendants in error are not entitled to recover in equity, as they have a complete and ample remedy at law.

Mr. JOHN HUTCHINSON, and Mr. N. A. PARTRIDGE, for the defendants in error:

In a suit by a landlord for rent against one alleged to be an assignee, the question is not whether the defendant is an assignee by a valid instrument, as between him and the lessor, but whether he has held himself forth to the landlord as such. Having all the benefits of an actual assignee, he will be estopped from denying the validity of the assignment to him. *Carter* v. *Hammel,* 12 Barb. 253; *Carter* v. *Hammel,* 18 id. 608; *Glover* v. *Wilson,* 2 id. 264; *Armstrong* v. *Wheeler,* 9 Conn. 81; *Prevost* v. *Cutler,* 2 Wend. 577; *Wilson* v. *Leonard,* 3 Beav. 373; *Bedford* v. *Therber,* 30 N. Y. 453.

The breach of the covenant by the lessee in assigning the lease without the approval of the lessor, did not terminate the lease and revest the estate of the lessor. *McGlynn* v. *Moore,* 25 Cal. 384; *Jackson* v. *Sheldon,* 5 Cow. 448; *Bleeker* v. *Smith,* 13 Wend. 501; *Roe* v. *Harrison,* 2 T. R. 405; 5 Taunt. 249; Smith's Landlord and Tenant, 159.

Acceptance of rent from the assignee is a waiver of a ground of forfeiture for assigning the lease without the landlord's consent. *Ireland* v. *Nichols,* 46 Ill. 413; *Shattuck* v. *Lovejoy,* 8 Gray, 204.

Mrs. Webster, by holding over after the renewal of the lease, ratified the renewal, and bound herself to the covenant to pay rent. *Phyfe* v. *Wardell,* 5 Paige, 268; *House* v. *Burr,* 24 Barb. 525; *Cotlett* v. *Hooper,* 11 Ves. 215; *Gibbs* v. *Jenkins,* 3 Sandf. Ch. 143; *Webber* v. *Sherman,* 13 Hill, 547; *Blumerburg* v. *Rhodes,* 32 Cal. 93; *Laglamm* v. *Dougherty,* 35 Pa. St. 45; *Conway* v. *Starkwell,* 1 Denio, 113; *Deford* v. *Walbridge,* 9 Conn. 334; *Harkins* v. *Pope,* 10 Ala. 493; *McKinney* v. *Peck,* 28 Ill. 174; *Griffin* v. *Knowly,* 15 id. 412; *Voigt* v. *Reason,* 80 id. 332; *Schuyler* v. *Smith,* 51 N. Y. 309.

A covenant in a lease giving the landlord a "first and valid lien" upon any and all buildings erected or to be erected on the premises, is a covenant running with the

land.   *Vernon* v. *Smith,* 5 Barn. & Ald. 1 ; *Allen* v. *Culber,* 3 Denio, 284 ; *Bally* v. *Wells,* 3 Wil. 25 ; *Norman* v. *Wells,* 17 Wend. 136 ; Taylor's Landlord and Tenant, secs. 260, 269, 293, 302, 332, 449.

The lien sought to be enforced is one created by contract, and is not regulated by the statute relating to chattel mortgages.   *Metcalf* v. *Fosdick,* 23 Ohio, 114.

That a valid lien may be created upon a thing not in existence, which is enforceable when the thing is brought into existence, counsel cited *Butt* v. *Ellitt,* 19 Wall. 544 ; *Everman et al.* v. *Robb,* 53 Miss. 654 ; *Halroyd* v. *Marshall,* 10 H. L. Cas. 191 ; *Smithers* v. *Edmonds,* 1 McCarthy, 405 ; *Garner* v. *Culting,* 32 Iowa, 553.

As to equity jurisdiction to enforce payment of the rent in this case out of the property pledged, see Willard's Equity, 133 ; *Livingston* v. *Livingston,* 4 Johns. Ch. 290 ; 4 McLaren, 287 ; *Thorndike* v. *Arlington,* 1 Ch. Cas. 79 ; *Sturveley* v. *Murphy,* 2 Irish Eq. 448 ; *Benson* v. *Baldwin,* 1 Ark. 480 ; Taylor's Landlord and Tenant, 484–7 ; *Treacle* v. *Coke,* 1 Vern. 165.

There was no error in including the $500 penalty in the decree.   The lessor was compelled to pay that sum.   *Wicker* v. *Hoppock,* 6 Wall. 99.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court :

The clause in the lease providing that the premises shall not be assigned without the written assent of the lessors, is clearly for the benefit of the lessors only.   It does not render the assignment, when otherwise made, absolutely void, but voidable only, at the option of the lessors or their representatives.   But even if the lessors, instead of here attempting, as they now are, to enforce rights under an assignment otherwise made, were attempting to have such an assignment declared void, they could not succeed.   They have knowingly accepted rent from Abiah G. Webster since she has been in

possession as purchaser from Gage, and this concludes them, for it is well settled that "any act done by a landlord know-ing of a cause of forfeiture by his tenant, affirming the existence of the lease, and recognizing the lessee as his ten-ant, is a waiver of such forfeiture. (1 Williams' Saunders, 287; 2 Platt on Leases, 471; 1 Washburn on Real Property, 454.) The receipt of rent subsequently accruing from the tenant by the landlord is such an act, and the forfeiture thereby waived. (*Bleeker* v. *Smith*, 13 Wend. 530; *Jackson* v. *Allen*, 3 Cow. 220, and authorities cited by SUTHERLAND, J. 230.)" *Ireland* v. *Nichols*, 46 N. Y. 416. See, also, *Shattuck* v. *Lovejoy*, 8 Gray, 204; *Fisher* v. *Deering*, 60 Ill. 114.

The answer expressly asserts that Abiah G. Webster, by her husband, Christopher C. Webster, purchased the houses, and immediately entered into possession, and leased them, etc. The proof clearly shows that the houses and the unexpired term were sold at the same time, and as a part of the same transaction, and not separately and distinctly. Although Christopher C. Webster in his testimony denies that he had any agreement with Gage as to leasing the ground for any certain term, he nevertheless admits that when he purchased he did so with the understanding that the houses stood on leased ground which had seven years to run, with the privi-lege of renewal. His purchase, he says, was for his wife, Abiah, and with her money. He makes no claim to having purchased the lease for himself. He shows the payment of rent by his wife, pursuant to the terms of the lease, to the lessors, and the acceptance by them of the rent. She "claims through and is in of the same estate" as Gage, whom she succeeds, and is, therefore, assignee. Taylor's Landlord and Tenant, sec. 429; *Bedford* v. *Therber*, 30 N. Y. 453; *Provost* v. *Caller*, 2 Wend. 517; *Fisher* v. *Deer-ing, supra.*

It is unimportant whether Abiah G. Webster is to be regarded as a party to the renewal of the lease, (as, under

all the evidence, we think clearly she should be,) for inasmuch as it is proven that she continued to occupy the premises, the law binds her, in the absence of a new agreement, to the same terms by which she was bound by the old. *Clinton Wire Cloth Co.* v. *Gardner,* 99 Ill. 151; *Griffin* v. *Knisely,* 75 id. 411; *McKinney* v. *Peck,* 28 id. 174.

Since the answer sets up no claim to the term in Christopher C. Webster, but virtually concedes its sale to and purchase by Abiah G. Webster, we think the fact that Gage subsequently executed a written assignment to Christopher C. Webster of no consequence. Title passed from Gage, and to Abiah G. Webster, by the purchase and sale. He knew, Webster says, that the purchase was with her money and for her use, and so when he subsequently executed a bill of sale and assignment to Christopher C. Webster, he had nothing to sell or assign, and necessarily, therefore, nothing passed thereby. In a case of doubt the writing would probably be sufficient to settle the controversy and establish the title in the party whom it designates as purchaser. But here there is no doubt. The answer settles the question to whom the sale was made, and it does not lie in the mouths of the Websters to now say that it was not made to Abiah G. Webster; and we repeat, there is no pretense that the houses were sold to one person and the lease to another, but the entire tendency of the proof, on the contrary, is, that there was but a single transaction, in which the unexpired term passed with the sale of the houses. Abiah G. Webster took possession, remained in possession during the remainder and after the expiration of the term, and paid rent for a time, and, so far as rent was paid at all, in accordance with the terms of the lease to Gage, Christopher C. Webster meanwhile claiming no possession or right of possession of either houses or ground during all that time, save as the agent of Abiah G. Webster. Surely it can need no demonstration that A, having passed his title to B, can not, by any subsequent act,

whether formal or informal, pass the same title to C. It is, of course, understood, and to be borne in mind, that there is nothing, as regards the rights of the parties here contending, to prevent the passing of title or right of possession to the remainder of the term, as well as of the houses, by a parol agreement, accompanied, as the evidence here shows was the fact, by actual possession, delivered and accepted in accordance with the terms of such agreement.

*Walters* v. *Northern Coal Mining Co.* 5 De Gex, MacN. & Gord. 629, *Cox* v. *Bishop*, 8 id. 815, and *Robinson* v. *Rosher*, 1 Y. &. C. 7, cited by counsel for plaintiffs in error, are unlike the present case. In the first, a bill in equity was filed for specific performance, and the recovery of rent from a *cestui que trust*. In the next case, the question, as stated by Lord Justice Knight BRUCE, was, "whether an equitable assignee of a legal term of years granted in mines, or mines and other hereditaments, under a reserved rent and certain covenants, is liable to be sued in equity by the lessor for rent which became due, and damages in respect of some of the covenants committed during the time that the assignee was in the possession and enjoyment of the demised property as the equitable assignee of it, which he had then ceased to be." In the other case the question was, whether, when an equitable interest has been acquired in leasehold property by a contract in the nature of an assignment, the landlord had the right to proceed in a court of equity against the assignee as if he were his tenant. As we have before seen, in the present case Abiah G. Webster is not merely an equitable assignee,—she is a legal assignee; and if the object were simply to obtain a decree against her for the rent due, a court of equity would have no jurisdiction, for the remedy at law would be complete. But the bill here is to enforce payment of rent by the sale of specific property, upon the ground that a lien for that purpose is reserved upon the property,—in

other words, to enforce that lien,—and it is this alone which is claimed to give a court of equity jurisdiction.

But the point is made that the covenant sought to be enforced does not run with the land, or otherwise bind the assignee. The covenant is as follows: "That he will pay, or cause to be paid, all water rates, and all taxes and assessments, except special assessments for permanent improvements, that may be laid, charged or assessed on said demised premises pending the existence of this lease, or if, at any time after any tax, assessment or water rate shall have become due or payable, the party of the second part, or his legal representatives, shall neglect to pay such water rates, tax or assessment, it may be lawful for the party of the first part to pay the same at any time thereafter; and the amount of any and all such payments so made by the party of the first part shall be deemed and taken, and are hereby declared to be, so much additional and further rent for the above demised premises due from and payable by the party of the second part, and may be collected in the same manner, by distress or otherwise, as is hereinafter provided for the collection of other rents to grow thereon. And it is expressly understood and agreed by the said party of the second part hereto, for himself, his heirs, executors, administrators and assigns, that the whole amount of rent reserved and agreed to be paid for said above demised premises, and each and every installment thereof, shall be, and is hereby declared to be, a valid and first lien upon any and all buildings and improvements on said premises, or that may at any time be erected, placed or put on said premises by the said party of the second part, his heirs, executors, administrators or assigns, and upon his or their interest in this lease and the premises hereby demised; and that whenever and as often as any installment of rent or any other amount above declared to be deemed and taken as rent shall become due and remain unpaid for one day after the same becomes due and payable,

said party of the first part, her heirs, executors, administrators, agents, attorneys or assigns, may sell at public auction, to the highest bidder for cash, after having first given ten days' notice of the time and place of such sale in some newspaper published in the city of Chicago, all the buildings and improvements on said premises, and all the right, title and interest acquired by said party of the second part under this lease to the premises herein described, and as the attorney of the said party of the second part, hereby irrevocably constituted, may make to the purchaser or purchasers thereof a suitable and proper transfer, bill of sale or deed of the same, and out of the proceeds arising from such sale, after first paying all costs and expenses of such sale, including commissions and attorney's fees, retain to himself the whole amount due on said lease up to the date of said sale, rendering the surplus, if any, to said party of the second part, his heirs, executors, administrators, agent, attorney or assigns, which sale shall be a perpetual bar to and against all rights and equities of said party of the second part, his heirs and assigns, in and to the property sold."

The general doctrine is thus stated in Taylor on Landlord and Tenant, sec. 260: "Covenants in a deed that extend to a thing *in esse,* parcel of the demise, and benefit the estate, *run with the land,* and bind not only the covenantor and his personal representatives by privity of contract, but also the assignee, though not named, and every other person who is in of any estate created by or growing out of the original demise, by privity of estate." And so the same author says, in section 372, the covenant to pay rent "is a covenant running with the land, binding on the assignee, without his being specially named." And upon this principle it has been held that a covenant to become surety for the payment of rent runs with the land. (*Allen* v. *Culver,* 3 Denio, 284.) The covenant that the rent, etc., shall be a valid and first lien upon the buildings and improvements, etc., is in the nature

of security for the performance of the covenant for the payment of rent, and is, therefore, governed by *Allen* v. *Culver.* It is but an incident or accessory to that covenant,—not a debt or right of property, but a remedy for a debt. It stands or falls with the covenant to pay rent. That covenant runs with the land, and this covenant is necessarily carried with it as the remedy stipulated by the parties for its enforcement. All talk, therefore, about this covenant, except as an inseparable incident or accessory to the covenant to pay rent, is out of place, because it has and can have no existence as a separate and independent covenant.

But counsel for plaintiffs in error again contend that this lien can not be enforced, because the lease was not executed, acknowledged and recorded in conformity with the requirements of the statute relating to chattel mortgages. The question here does not affect third parties,—it is only between the lessors and the assignee of the lessees. No creditors or purchasers without notice are concerned.

We have held in *Gregg et al.* v. *Sanford,* 24 Ill. 17, *Titus et al.* v. *Mabee et al.* 25 id. 257, and *Gittings* v. *Nelson,* 86 id. 591, that a chattel mortgage or deed of trust of chattels does not create a lien on personal property acquired or brought into existence after its execution, as against creditors or purchasers. But this does not apply to cases where only the parties to the instrument, or their representatives, are concerned. As between them we have held a chattel mortgage is good, though not executed, acknowledged or recorded as required by the statute. *Davis* v. *Ransom et al.* 26 Ill. 100; *Fuller* v. *Paige,* id. 358; *Badger* v. *Batavia Paper Manf. Co.* 70 id. 302; *Sumner* v. *McKee,* 89 id. 127; *Forest et al.* v. *Tinkham et al.* 29 id. 141. And in *Cruikshank* v. *Cogswell,* 26 Ill. 366, in speaking of the sale of a house there in controversy, we said: "As between the parties to it, delivery was not essential to the completion of the sale of the house. It was competent for the parties to agree at the time of the sale

that the seller might retain possession of the house as long as he pleased, and upon any consideration which suited him, and no one but a creditor of, or purchaser from, the seller could take advantage of the non-delivery to the purchaser." See, also, to like effect, *Corgan* v. *Frew*, 39 Ill. 31.

It was said by STORY, J., in *Mitchell* v. *Winslow*, 2 Story, 630 : "It seems to be the clear result of all the authorities, that whenever the parties, by their contract, intend to create a positive lien or charge, either upon real or personal property, whether it is then *in esse* or not, it attaches in equity as a lien or charge upon the particular property as soon as the assignor or contractor acquires a title thereto, against the latter, and all persons asserting a claim thereto under him, either voluntarily or with notice, or in bankruptcy." See, also, *Morrill* v. *Noyes*, 56 Me. 458 ; *Silbus* v. *Lester*, 48 Miss. 526 ; *Everman et al.* v. *Robb*, 52 id. 653·; *Benjamin* v. *Elmira, etc. R. R. Co.* 49 Barb. 441 ; *Seymour* v. *C. N. F. R. R. Co.* 25 id. 286 ; *Page* v. *Gardner*, 20 Mo. 507 ; *Wright* v. *Birch's Exr.* 72 id. 179 ; *Garner* v. *Culting*, 32 Iowa, 547.

Without taking time to examine cases holding, or seeming to hold, a contrary doctrine, we deem it sufficient to say that, as applied to the facts of the present case, the language quoted from Mr. Justice STORY is, in our opinion, perfectly accurate.    In *Butt* v. *Ellett*, 19 Wall. 544, a lease of a plantation was executed for one year.    The lessees gave their note for the rent, and to secure the payment of the note a clause was embodied in the lease mortgaging all the crops to be raised on the plantation for the current year.    The court said : "The mortgage clause in the contract of lease of the 15th of January, 1867, executed by Silber and Graham, could not operate as a mortgage, because the crops to which it relates were not then in existence.    When the crops grew the lien attached, and bound them effectually from that time. * .* *   Ellett having bought the premises, became clothed

with all the rights of Silber touching the rent stipulated to be paid by Graham. The sheriff's deed conveyed the reversion, and the rent followed it as an incident. The lease passed by assignment to the grantee, and all its provisions in favor of the lessor inured to the benefit of the assignee." The case seems quite analogous to the present case, and well illustrates the controlling principles.

It being competent for the parties to covenant for this lien, and the lien being valid as well against the assignee as the lessee, the next inquiry is,. can it be enforced in.a court of equity, or is the remedy solely at law? And in regard to this there can be no doubt. Story, in his work on Equity Jurisprudence, vol. 1, sec. 506, says: "Liens also give rise to matters of account; and although this is not the sole, or, indeed, the necessary, ground of interference of courts, of equity, yet, directly or incidentally, it becomes ‾a most important ingredient in the remedial justice administered by them in cases of this sort.  *  *  *  A lien is not in strictness either a *jus in re* or a *jus ad rem,* but it is simply a right to possess and retain property until some charge attaching to it is paid or discharged." And after specifying instances in which liens attach, the author proceeds: "Now, it is obvious that most of these cases must give rise to matters of account, and as no suit is maintainable at law for the property, by the owner, until the lien is discharged, and as the nature and amount of the lien often are involved in great uncertainty, a resort to a court of equity, to ascertain and adjust the account, seems in many cases absolutely indispensable for the purposes of justice." See, also, same authority, sec. 1217; Bispham's Principles of Equity, (2d ed.) p. 419.

Waiving the question whether the lien here is to be regarded only as an equitable lien, we are of opinion.there was such necessity for the taking of an account as brought the case within that branch of the court's jurisdiction.

Objection is urged that the court erred in applying the money in court to the payment of the indebtedness. We see no error in this. The right to control the income, etc., of the premises, follows as a logical sequence from the right to enforce a lien upon them. If from the income the rent could be paid, no sale should be ordered.

We are of opinion, however, that the court below erred in decreeing the payment of the penalty on taxes for two years ($500). The covenant binds the lessee to the payment of no penalty, but of the taxes only. The consequence of failure, in that regard, the covenant declares to be, that it shall be lawful for the party of the first part to pay the same, and thereby the amount so paid shall be so much additional and further rent, for the payment whereof the lien just considered is given. When the lessee did not pay, the lessor should have paid, both for the protection of his reversionary interest and in order to charge the lessee with the amount, by virtue of the covenant. It was his own neglect and folly that he permitted judgment against the property, and sale for the non-payment of taxes.

The decree below will be reversed, with direction to the court below to strike out so much as is for penalty for non-payment of taxes, and in all other respects it will be affirmed.

*Decree modified.*