Arado v. Maharis, 232 Ill. App. 282.

## Tom Arado, Appellee, v. Peter Maharis et al.    James Vourlitis, Appellants.

### Gen. No. 28,220.

1. LANDLORD AND TENANT—*waiver of forfeiture by acceptance of rent.* In an action of forcible detainer to recover premises after a declared forfeiture of a lease for the illegal sale of liquor on the premises, plaintiff is shown to have waived the right to declare a forfeiture, notwithstanding a provision in the lease that the acceptance of rent after a cause of forfeiture should not operate as a waiver, where it appears that with knowledge of the illicit sale of intoxicating liquors on the premises he accepted rent over a period of several months following such breach of the terms of the lease and there is no evidence of any breach after the acceptance of the last rent money by the landlord and before the serving of notice of forfeiture.

2. LANDLORD AND TENANT—*waiver of forfeiture of lease for bootlegging not against public policy.* The provision of the Prohibition Act, Cahill's Ill. St. ch. 43, ¶ 21, declaring any building wherein intoxicating liquor is sold to be a common nuisance and of ¶ 25, providing that for any violation of the Act on leased premises the lessor at his option may declare a forfeiture of the lease, do not preclude a lessor from waiving a breach of the lease by sale of liquors as against public policy.

3. LANDLORD AND TENANT—*scienter of lessee not essential to forfeiture for act of subtenant.* A landlord's right to declare a forfeiture of a lease for the unlawful sale of intoxicating liquors by a sublessee under a provision of the lease giving him authority to terminate it for any unlawful act committed on the premises is not dependent upon a showing that the principal lessee knowingly permitted the subtenant to violate the law predicated on a provision of the lease that the tenants will not use nor permit the premises to be used for any unlawful proposes.

Appeal by defendant from the Municipal Court of Chicago; the Hon. BERNARD P. BARASA, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1922. Reversed and remanded. Opinion filed February 20, 1924.

O'DONNELL & TOOLEN, for appellant, J. VOURLITIS.

CHARLES P. MOLTHROP and J. ARTHUR JOHNSON, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Tom Arado brought an action of forcible detainer against Peter Maharis and Frank Geller to recover possession of the premises known as No. 4800 West North avenue, Chicago. Afterwards James Vourlitis was made an additional party defendant. The case was tried before the court without a jury and there was a finding that defendants were guilty of unlawfully withholding from the plaintiff the possession of the premises in question and judgment was entered on the finding. All of the defendants prayed for and were allowed an appeal to this court, but the defendant Vourlitis alone has perfected his appeal.

The record discloses that plaintiff owned the premises in question and on April 16, 1920, entered into a written lease whereby he demised to the defendants Maharis and Vourlitis the premises from the first day of May, 1920, until the thirtieth day of April, 1929. It was stipulated in the lease that the premises were to be occupied "for confectionery or any other lawful business, except restaurant and barber shop, and for no other purpose whatever." Some time afterwards the tenants sublet part of the premises to one Wiley Williams who occupied the store and basement which had been sublet to him until about the month of September, 1921, when he surrendered up the possession to the defendant Geller, who took possession of the store and basement and conducted a so-called soft drink and lunch business on the premises.

On November 18, 1921, two federal prohibition agents went to Geller's place of business and bought some hard liquor, which contained a greater percentage of alcohol than was permitted by the prohibition laws. A week later, on November 25, federal prohibition officers again went to the premises and took a considerable quantity of whisky away with them, which they found in Geller's place of business. Following this on January 3, 1922, counsel for plaintiff

wrote a letter to plaintiff, advising him that he had been informed that proceedings were under way to close the premises in question, because he understood there had been numerous violations of the prohibition law, and advised plaintiff to take immediate steps to protect his property and that plaintiff had "better look into this matter at once, see what the situation is and if necessary take steps to oust the occupant if there has been violations of law." When plaintiff received this letter through the mail, he immediately sent it to the defendant Vourlitis to ascertain whether there had been any violations of the prohibition law in the conduct of the business in the premises. Upon receipt of this letter, Vourlitis testified he took the matter up with the defendant Geller, and the latter stated there had been no violations of the prohibition law, but that the matter was a "frame-up."

Plaintiff knew that the store and basement had been occupied by Williams and Geller and he also knew that liquor had been sold there for a long time in violation of the law. The rent was paid promptly on the first of every month in advance to plaintiff, as the lease provided. On March 22, 1922, plaintiff served a notice on the three defendants advising them that he elected to terminate the lease given by him to Maharis and Vourlitis, and demanded possession of the premises within ten days from that date. The notice stated that plaintiff was terminating the lease because intoxicating liquors had been sold in the premises contrary to law. The sublease to Williams, which was turned over to the defendant Geller, by its terms expired April 30, 1922. On April 1, 1922, the defendant Vourlitis served the subtenant, Geller, with a notice, demanding that Geller vacate the premises on April 30, 1922, and that possession be surrendered up by Geller at that time. On April 12, plaintiff commenced the case which is before us on appeal.

The lease executed by plaintiff to Maharis and Vourlitis provided that the premises were to be oc-

cupied for "a confectionery or any other lawful business, except a restaurant and barber shop" and it further provided "that the lessees will not permit said premises to be used for any unlawful purpose or purposes that will injure the reputation of the same or of the building of which they are a part." There was a further provision that if there was a default by the tenants in any of the covenants or agreements contained in the lease, that the plaintiff might declare the term ended and re-enter the premises. The lease also further provided: "It is further agreed by the parties hereto, that after the service of notice, or the commencement of a suit, or after final judgment for possession of said premises, the lessor may receive and collect any rent due, and the payment of said rent shall not waive or affect said notice, said suit or said judgment."

The defendant contends that since the plaintiff, the landlord, received payment of rent for several months after he knew there had been a violation of the prohibition law by the subtenants, he waived the right to forfeit and determine the lease on account of such violation. The law is well established that the receipt of rent by the landlord, accruing subsequent to a breach of the conditions of the lease, with knowledge of the fact, waives the right of forfeiture for such breach. *Vintaloro v. Pappas,* 310 Ill. 115; *Watson v. Fletcher,* 49 Ill. 498; *Webster v. Nichols,* 104 Ill. 160; *Hopkins v. Levandowski,* 250 Ill. 372; *Goldberg v. Pearl,* 306 Ill. 436. But where there is a continuing cause of forfeiture the acceptance of rent after the time the original ground of forfeiture was committed will not preclude the landlord from insisting upon a forfeiture for the breach continuing after the acceptance of the rent. The acceptance of the rent waives only the breaches occurring before the receipt of it, and does not authorize a continuing breach. *Vintaloro v. Pappas, supra.*

In the instant case, the acceptance of each month's rent by the landlord waived all prior breaches. The

only evidence in the record which would justify a finding of a breach is that involving the violations on November 18 and November 25, testified to by the federal prohibition agents. And plaintiff having accepted several months' rent after those breaches, thereby waived his right to forfeit the lease for such breaches. If plaintiff had shown by the evidence that there had been a breach after he had accepted the last rent and prior to the serving of the notice on March 22, and had after the service of such notice accepted payment from the tenant, this would not have effected his termination of the lease, because of the provision above quoted, which provided that after notice of termination the receipt by the landlord of rent should not affect the notice. And while the moneys so received could not accurately be called "rent," the lease having been determined, it nevertheless could be received as compensation for the use and occupation of the premises by the tenants. *Vintaloro v. Pappas, supra.*

Counsel for plaintiff contends that plaintiff by accepting the rent did not waive the breach, because to do so would be against public policy, and in support of this it is said that by the Prohibition Act of this State it is provided that any room or building where intoxicating liquor is sold is declared to be a common nuisance, and that any person who maintains such a common nuisance shall be guilty of a misdemeanor and subject to certain penalties. (Cahill's Ill. St. ch. 43, ¶ 21.) We think this argument is unsound as appears from ¶ 25 of the same chapter, which is: "Any violation of this Act upon any leased premises by the lessee or occupant thereof shall, at the option of the lessor, work a forfeiture of the lease." From this section it clearly appears that it is optional with the lessor to declare a forfeiture of the lease where the tenant violates the Prohibition Act. Moreover, we think there is no question of public policy involved. If it be held that plaintiff waived the breach by accepting the rent,

this in no way affects the provisions of the statute, which declares the building in which a violation of the law takes place to be a common nuisance and subjects the person who so violates the law to certain penalties. For if the law had been violated by the selling of intoxicating liquors in the premises in question, all parties mentioned in the Prohibition Act would be subject to the penalties there imposed, whether it be held that plaintiff waived the breach or not.

There is no merit in the defendant's contention that the plaintiff could not terminate the top lease, unless it appeared that he (the defendant) knowingly permitted the subtenant to violate the law, because the original lease provides that the tenants will not use nor permit the premises to be used for any unlawful purpose. If the premises were used for an unlawful purpose by the subtenant without the knowledge of the top tenant, it would not affect the landlord's right to terminate the lease.

Since the plaintiff by accepting the rent after the breach waived such breach, he is not entitled to recover, and, therefore, the judgment of the municipal court of Chicago is reversed and the cause remanded.

*Reversed and remanded.*

TAYLOR, P. J., and THOMSON, J., concur.