## Consolidated Coal Co. of St. Louis v. Joshua S. Peers.

1.   APPELLATE COURT PRACTICE—*Where No Cross-Errors Are Assigned.*—Where an appellee assigns no cross-errors, he can not, in the Appellate Court, question the correctness of an adverse ruling of the trial court upon a rejoinder filed by him to a replication to his adversary's plea.

2.   PLEADING—*Inducement Defined.*—In pleading, the term inducement is the statement which is introductory to the principal subject of the plea itself. Whether matter in a pleading is inducement or surplusage, must be determined by a sound construction of the whole pleading.

3.   SAME—*Surplusage Defined.*—Surplusage in pleading is defined to be matter wholly foreign and impertinent to the cause of action under consideration, not introductory or necessary to explain or elucidate it.

4.   LEASES—*Rights of the Lessee and Liabilities of Assignees.*—An assignee of a lease is bound, by reason of the privity of estate, to a performance of all express covenants of the lease which run with the land leased.

**Suit for Royalties,** under a mining lease. Appeal from the Circuit Court of Madison County; the Hon. WILLIAM HARTZELL, Judge, presiding. Heard in this court at the August term, 1900. Affirmed. Rehearing denied. Opinion modified and refiled September 4, 1901.

**Statement.**—After the former judgment of the Circuit Court, and the judgment of this court affirming it, were both reversed by the Supreme Court (see 166 Ill. 361), and after the cause was remanded to the Circuit Court, all of the original pleadings were abandoned and a new declaration was filed consisting of two counts, to which there was subsequently added another or third count. To the first count a plea was filed, raising an issue of fact, and this issue is apparently pending and undisposed of on the record.

To the second count two pleas were filed, a replication was filed to the pleas, a rejoinder was filed to the replication and a demurrer was interposed to the rejoinder; the demurrer was overruled and appellee electing to stand by it, judgment was entered against him on the second count, for all costs accrued thereon.

To the third count appellant interposed a general demur-

rer, which the court overruled, and judgment *nil dicit* was rendered in favor of appellee.   A writ of inquiry was executed by the court without a jury, by consent of the parties, and appellee's damages were assessed at $3,600, and judgment was rendered in his favor for that sum.

The judgment rests entirely on the third count of the declaration, which is as follows:

" That the plaintiff on the 17th day of December, 1870, was the owner of the coal underlying the southwest quarter of the northwest quarter, and west half of the southwest quarter of section four (4) in township two (2) north, range eight (8) west, in St. Clair county, Illinois; and the Abbey Coal and Mining Company of that county was a corporation existing and doing business under the laws of the State of Illinois, and was then and there engaged in the business of mining and operating coal.   That the plaintiff, on the day and year aforesaid, together with Adeline C. Peers, his wife, who is since deceased, by their lease of that date, set over and assigned to the Abbey Coal and Mining Company for the term of twenty-five years, the sole and exclusive right of mining and operating in coal in the said tracts of land, in consideration whereof the lessee agreed to begin mining within twelve months from the date of the lease, and guarantee a yearly royalty of not less than twelve hundred dollars per year after the expiration of twelve months from the date last aforesaid.   That in and by the said lease it was further provided that if after the expiration of a year from the date thereof no coal should be mined from the said tract of land, the lessee should pay the monthly installments of one hundred dollars on its guarantee of twelve hundred dollars per year, and said payments should be considered as advanced royalty, and the lessee was to have the right to mine coal sufficient to make the amount of coal mined equal to the royalty paid, provided the royalty paid should not be less than one hundred dollars per month. That the lessee should carry on the work in a good workmanlike manner, and take as much coal from the land as the safety of the mine would admit, and pay the plaintiff a royalty of three-eighths of a cent per bushel of eighty-five pounds for all coal mined, except for the coal taken from the shaft, entries and courses, and coal used for the engines, which was to be free from rent.   That the said royalty should be paid monthly on the 28th day of each month for all the coal mined during the preceding month.

Plaintiff further avers that afterward, on the day and year aforesaid, the lessee entered upon the land and sunk a shaft and began mining the coal under the said lease, and so continued to do until the 11th day of August, 1886, when, by its deed of that date, the said Abbey Coal and Mining Company granted, bargained, sold, assigned, transferred and set over to the defendant the coal underlying the said tracts of land, with all the rights, privileges and appurtenances thereunto appertaining and belonging, as the same were conveyed and assured by the said lease, and subject to the performance of the agreements therein mentioned to be performed by the lessee; and thereby covenanted and agreed to and with the defendant that it was seized of a perfect title, and that the same was free from all other and prior incumbrances, except those specifically mentioned therein, and that it would warrant and defend the same to the defendant and its successors forever. That the defendant thereupon took possession of the property by the said deed conveyed to it, and from thence until the commencement of this suit has had the use, control and enjoyment thereof, and during that time, from the 20th day of September, 1891, until the 20th day of September, 1894, there accrued to the plaintiff, under the provisions of the said lease, for and on account of the royalty guaranteed as aforesaid, and which had not been paid or recovered, the sum of thirty-six hundred dollars, the same consisting of the monthly sums of one hundred dollars per month, which the lessee covenanted and agreed to pay according to the tenor and effect of the lease aforesaid, which said aggregate sum neither the said Abbey Coal and Mining Company nor the defendant company have ever paid to the plaintiff. And plaintiff avers that in and by the said deed of the said Abbey Coal and Mining Company, it granted, bargained, sold, assigned and set over to the defendant company, besides the leasehold interest and estate it had in and to the coal underlying the said tracts of land above described, all coal and coal rights, and all real estate owned by it at the time of the making of the said deed, and all tools, machinery, implements, live stock, personal property and fixtures theretofore owned and used by it in carrying on mining operations, and that it made the said deed with intent to retire from business, and after winding up its affairs by paying its liabilities then existing, incurred previous to that time for current and temporary purposes, and to the end that the defendant company should become its successor in said business, and have, hold, own, possess, enjoy and use all its property, real, personal and

Consolidated Coal Co. of St. Louis v. Peers.

mixed, and theretofore held, owned, possessed, used or enjoyed by the said Abbey Coal and Mining Company in carrying on coal operations and mining coal from the tracts of land aforesaid; and that immediately after the execution of the said deed to the said Abbey Coal and Mining Company it ceased to carry on coal or mining operations and to do business of any kind, except to wind up its affairs as aforesaid, and was succeeded in business by the defendant company, which not only succeeded to the ownership of the property as aforesaid, real, personal and mixed, but also to all the rights and obligations of the said Abbey Coal and Mining Company under all contracts made by it, and then unexecuted in whole or in part, for the sale of coal and the products of its mines in the market in which the said last mentioned company had theretofore dealt.

And plaintiff avers that prior to the said 11th day of August, 1886, the said Abbey Coal and Mining Company and the Ellsworth Coal Company, both corporations organized under the laws of the State of Illinois, and both engaged in mining coal, and leasing, buying, holding and working coal mines in the State of Illinois, and selling the products of their mines in the markets, and divers other companies, corporations and persons organized under the laws of Illinois, and doing business within the State, to wit, seventy corporations, companies and persons besides those above named, were merged into and consolidated into one company for the purpose and object of forming a general combination to do away as far as possible with competition in the markets between them theretofore existing, the result of which was that the defendant company was organized to succeed the said Abbey Coal and Mining Company and the said Ellsworth Coal Company, and the other companies, corporations and persons aforesaid in the business of mining, marketing, selling, handling, dealing and operating in coal on all the lines of railroad in the State of Illinois terminating at or near or within the limits of the city of East St. Louis; that after the organization of said defendant company for the objects and purposes aforesaid, to the end that the defendant company should gain as far as possible the control of the markets, and exclusive control of all of the business previously carried on by the said Abbey Coal and Mining Company and the said Ellsworth Coal Company, and the other companies, corporations and persons aforesaid, the deed above mentioned from the Abbey Coal and Mining Company to the defendant company was executed, and it also obtained other deeds conveying all the

coal, coal rights, coal lands, mining properties and holdings of the said companies, corporations and persons, and became their successor in the business of mining and operating in coal and selling coal in the markets in which said several corporations and companies had previously dealt, and from thence until the commencement of this suit, has continued to carry on the business of mining coal and selling, dealing in and handling coal in the markets aforesaid; whereby a consolidation of all the properties of the said corporations, companies and persons used for mining purposes was effected, and the defendant gained control of the same, and became the successor of the said corporations, companies and persons under contracts previously made by them for the sale of coal in the markets aforesaid, and to all rights and interests of said corporations, companies and persons in the coal mining business, so far as it was in their power to transfer and convey the same. And the plaintiff avers that after the formation of the defendant company, and the transfer to it of the properties of the corporations, companies and persons, the said last named corporations, companies and persons ceased to do business, and have not been engaged in business since then; and that Charles Ridgely, who was president of the said Ellsworth Coal Company, and one of the largest stockholders in it, George T. Cutts, who was secretary of the same company, and a stockholder in it, became president and secretary respectively of the defendant company at the organization thereof; that E. J. Crandall, who was president of the Abbey Coal and Mining Company, became the general manager of the defendant company at its organization, and was a large stockholder in both of said companies, and that one Thomas D. Price, who was the treasurer in said Abbey Coal and Mining Company, and its principal stockholder, became a large stockholder in, and the treasurer of the defendant company; and that all of the members of said constituent companies above named also became the controlling members of the defendant company at its organization, and continued to operate and manage it for a long space of time thereafter, and the said Ridgely and Cutts from thence until the commencement of this suit, by reason whereof, and by force of the statute in such case made and provided, the plaintiff avers the defendant became and is liable to pay the plaintiff the sum of thirty-six hundred dollars above mentioned for and on account of the monthly royalties aforesaid; and being so liable the said defendant afterward, etc., undertook and promised to pay the plaintiff the said sum of money, but

has not done so, to the plaintiff's damage of four thousand dollars."

CHARLES W. THOMAS, attorney for appellant.

JOHN G. IRWIN and WM. H. KROME, attorneys for appellee.

MR. JUSTICE BIGELOW delivered the opinion of the court.

The errors assigned are, that the court erred in rendering judgment for the plaintiff on the third count, without disposing of the issue made on the first count of the declaration.

That the court erred in overruling appellant's demurrer to the third count of plaintiff's declaration.

And that the court erred in rendering judgment against the defendant for $3,600.

Appellee has assigned no cross-errors and therefore the declaration must be regarded in this court, as consisting of only the first and third counts.

Anything that we might say in regard to the second count or of the effect of the ruling of the court in connection with it, would be uncalled for, and mere *obiter dicta*, as the count and all that pertains to it, is to this court, as though it never had existed.

Counsel for appellant insists that the omission to dispose of the issue raised on the first count is such error as should reverse the judgment of the trial court. It was technical error not to dispose of the issue, but inasmuch as that issue had nothing to do with the third count, the pertinent allegations of which appellant admits by his demurrer, appellant was in nowise prejudiced by the omission, and it is not therefore such prejudicial error as calls for a reversal of the judgment. In this view counsel for appellant agrees, as near the close of his printed argument he says:

" The litigation has been a long one, and if appellee has any just ground on the merits of the case for a recovery there ought to be a recovery, and if he has no such ground the litigation ought to be terminated."

We think that on the merits of the case appellee has just

ground to recover, and agree with the counsel that the litigation ought to be terminated.

As to the error which brings in question the judgment of the court in overruling appellant's demurrer to the third count of plaintiff's declaration, it is insisted by counsel for appellant that much of the count is mere inducement, and that the essential ground of the action is the claimed consolidation of the Abbey Company with appellant and that if the pleading fails to show that there was such a consolidation, then the demurrer was wrongfully overruled. Whether matter alleged in a pleading is inducement or surplusage, must be determined by a sound construction of the entire pleading.

"Inducement" has been defined as the statement of matter which is introductory to the principal subject of the declaration or plea, and which is necessary to explain or elucidate it. Such matter as is not introductory to, or necessary to elucidate the substance or gist of the declaration, plea, etc., or is collaterally applicable to it, is surplusage. Bouvier's Law Dictionary (Rawle's Ed.). And the same authority defines "surplusage" to be matter wholly foreign and impertinent to the cause. Had the pleader intended to have only stated the statutory liability of appellant to pay the rent reserved in the lease, all that would have been needful was to allege the consolidation of the Abbey Company with appellant, or facts constituting a consolidation; that the Abbey Company was owing the debt sued for, and that while so indebted it merged its corporate life with appellant.

The allegations that the Abbey Company made a deed to appellant, containing certain agreements, which deed was accepted by appellant, and that appellant went into possession of the leasehold estate, were all immaterial matters, if appellee was grounding his action on the claimed consolidation only. In no sense can they be taken to be in necessary explanation of the main groundwork of the count, if construed as a count for consolidation only. Ought these allegations to be considered as mere surplusage? The

allegation that the deed contained an agreement " subject to the performance of the agreements therein mentioned to be performed by the lessee," shows that the pleader relied upon the privity of contract that the law, in a proper case, may say exists; and the fact that the pleader says " that the defendant thereupon took possession of the property by said deed conveyed to it, and from thence until the commencement of this suit has had the use, control and enjoyment thereof," etc., shows that the pleader was relying for a recovery on the grounds of privity of estate existing between appellee and appellant as the assignee of the lessee, the Abbey Mining Company.   To denominate that kind of pertinent allegations as surplusage, when they are attacked in no way except by a general demurrer, merely because there is in the same count an attempt to hold appellant liable on the theory of a consolidation, would be to construe away essential allegations without authority of law.   We are of the opinion that the count should be regarded as presenting a double, or possibly a treble ground of liability for a single demand.   In other words, the count must be regarded as containing the fault known in pleading as duplicity, and such a fault can be reached only by special demurrer.

The only question left is whether the count states some cause of action; for if it does, the court did not err in overruling the demurrer and in assessing the damages.

In passing on the present record, the decision in the 166th Ill. can not be controlling, because appellant's pleas in the record as it then stood showed an assignment of the leasehold estate, by appellant to one Lasurs, on the 28th day of November, 1887, and that he took possession of the leased premises, thereby terminating the privity of estate theretofore existing between appellee and appellant; nor is there in the present record any question of *res adjudicata*.   By the allegations already quoted appellant is admitted to have received an assignment of the leasehold estate from the Abbey Company, and the demurrer admits that appellant was in possession of the estate from September 20,

1891, to September 20, 1894. An assignee of a lessee is bound, by reason of the privity of estate, to a performance of all express covenants which run with the land. Consolidated Coal Company v. Peers, 166 Ill. 361; Sexton v. Chicago Storage Co., 129 Ill. 318; Webster v. Nichols, 104 Ill. 160.

This view of the case makes it unnecessary to determine whether there was a consolidation of the Abbey Company with appellant or not; and it likewise makes it unnecessary to determine whether the expression "performance of the agreements therein mentioned to be performed by the lessee," became a binding express covenant on appellant, when it accepted the deed from the Abbey Company. There was no error in assessing plaintiff's damages and rendering judgment therefor, as was done, since the demurrer admitted the royalty alleged in the count to be due and unpaid.

Finding no error in the record requiring a reversal of the judgment it is affirmed.