# JOHN W. CORGAN

*v.*

# AARON A. FREW.

1. PROMISSORY NOTE—*what constitutes—and, herein, of the use of the check or dollar mark.* An instrument was made as follows:

"$500.                                        WAVERLY, December 6, 1861.

"On or before the 20th of next May I promise to pay C. P. Christian, or his order, five hundred for value received of him," etc.

*Held,* to be a promissory note, and assignable as such.

2. While the check or dollar mark ˙in the margin cannot be used to contradict what is clearly written in the note, yet if from any cause there is uncertainty as to the sum intended to be written in the body of the instrument, the check mark may be resorted to for the purpose of explaining the instrument in that regard.

3. So in this case, the words "five hundred," written in the body of the instrument, by reference to the dollar mark in the margin, are shown to mean five hundred dollars.

4. WITNESS—COMPETENCY—*maker of a note, as between the assignor and assignee.* As between the assignor and assignee of a promissory note, for all purposes except to impeach its validity or to prove its payment, the maker is a competent witness,—his interest is equally balanced between the parties.

5. So where the assignee seeks to recover against his assignor upon the ground that the maker was insolvent and a suit against him would have been unavailing, the fact of his insolvency may be proved by the maker himself.

6. PAROL EVIDENCE—*whether a party has conveyed away his lands.* And in proving the fact of his insolvency by the maker, there is no objection to asking him whether he was the owner of real estate, as well as of personal property.

7. WITNESS—*of the various modes of impeachment—or the rule controlling juries in judging of the credibility of a witness.* It is not essential, in order to justify a jury in refusing to give credit to the testimony of a witness, that he should be impeached by evidence of bad character.

8. The usual mode of impeachment is to prove by other witnesses that his character for truth and veracity among his neighbors is so bad that he is unworthy of belief.

9. Yet a jury might be warranted in regarding a witness unworthy of credit from his relationship to the parties, his manner and appearance on the stand, or his evident bias in favor of one of the parties.

10. DELIVERY—*when necessary to complete a sale of personal property.* As between the parties, a delivery is not essential to a complete sale of personal

property and the passing of a title, when nothing remains to be done but for the purchaser to take possession.

11. But as to creditors and subsequent *bona fide* purchasers, a delivery is indispensable to complete the sale.

12. SALES OF PERSONAL PROPERTY — *presumption as to their good faith.* It may be that where all the elements of a valid sale of personal property exist, it will be presumed to have been made in good faith; but such would not be the presumption, when, in proving what is claimed to be a sale, some essential requirement is wanting.

13. As where a sale of personal property is made without a delivery of pos- session to the purchaser, as to creditors and subsequent *bona fide* purchasers, such a sale is presumed to have been made in bad faith.

14. MEASURE OF DAMAGES — *as respects rate of interest in suit by assignee against assignor.* In a suit by the assignee against the assignor of a note, the plaintiff should not recover more than he could have collected from the maker had he been solvent.

15. So where the assignee of a note drawing interest at ten per cent. reduces his debt to a judgment against the maker, and, failing to make the money, sues his assignor, the measure of his recovery will be, not the face of the note with ten per cent. interest, but only the amount of the judgment with interest thereon at six per cent. from the time it was rendered, and the assignee's costs in obtaining that judgment.

APPEAL from the Circuit Court of Perry county; the Hon. JOHN H. MULKEY, Judge, presiding.

On the 25th day of February, 1865, Aaron A. Frew com- menced his action of assumpsit in the court below against John W. Corgan, alleging, as the ground of the action, that Mason F. Woods, on the 6th day of December, 1861, made his note to C. P. Christian for $500, payable on or before the 20th day of May, 1862, with ten per cent. interest from due until paid; that Christian indorsed the note to John W. Corgan, the defendant, and that Corgan indorsed it to the plaintiff, Frew.

The plaintiff avers that Woods, the maker of the note, was insolvent from the maturity of the note until the commence- ment of this suit, so that the same could not have been collected by due process of law.

The defendant pleaded the general issue. On the trial, the plaintiff offered in evidence the following instrument:

" $500.                    WAVERLY, December 6, 1861.

" On or before the 20th of next May, I promise to pay C. P. Christian, or his order, five hundred for value received of him (with ten per cent. after due).

M. F. WOODS."

Indorsed: "Pay to John W. Corgan.

C. P. CHRISTIAN.

Pay to A. A. Frew.

J. W. CORGAN."

The defendant objected to the admission of the instrument in evidence, but the court overruled the objection and allowed it to be read to the jury, to which exception was taken.

The plaintiff then introduced in evidence the record of a judgment in his favor, rendered at the March Term, 1863, of the Circuit Court of Morgan county, against Woods, the maker, upon confession under a warrant of attorney, executed by the latter, for $542.11, upon the instrument above described.

The plaintiff offered to read the deposition of Woods, the maker of the instrument mentioned, by whom it was proposed to prove his insolvency, and the fact that he had sold his real estate as well as his personal property. The defendant objected to the reading of the deposition, and especially so much of the answers of the witness as related to the sale of his real estate. But the court allowed the deposition to be read, and the defendant excepted.

Woods testifies in his deposition, in detail, in reference to the sale of his property, a portion of which, one hundred and forty head of cattle, he stated he sold to Chesnut & Dubois in June, 1862. It is unnecessary, in the view in which the case is considered by the court, to notice the evidence more particularly.

Upon the evidence being closed, the court instructed the jury for the plaintiff as follows:

1. When the testimony of a witness is fair, not unreasonable, and consistent with itself, and the witness has not been impeached by any of the modes recognized by the law, a jury has no right to disregard the testimony of such witness.

3—39TH ILL.

2. If the jury believe from the evidence that defendant assigned the note described in the declaration to the plaintiff, and that when the note fell due the maker was insolvent and remained so up to the time of the commencement of this suit, and that the amount of the note could not have been made out of the maker by a judgment and execution they will find for plaintiff.

3. The presumption of law is that any sale of property is made in good faith, and that unless the defendant in this case has proved by sufficient evidence, or it otherwise appears from the testimony that the sale of the property of Woods was fraudulent, and that Woods was the owner of property, real or personal, subject to execution out of which the note in this case could have been made, they must find for the plaintiff.

To the giving of these instructions, the defendant excepted.

The following were given for the defendant :

1. That although the jury may believe from the evidence that Woods sold to Chesnut & Dubois the one hundred and forty head of cattle in June, 1862, and that the cattle at that time were at a different place and that Woods never actually delivered the possession of them to Chesnut & Dubois then the sale of these cattle would, in law, be fraudulent and void as against the execution creditors of Woods.

2. If the jury believe from the evidence that Mason F. Woods had property in his possession, subject to execution at any time after the plaintiff might have obtained a judgment and before the commencement of this suit, sufficient in value to have paid the debt in question, the verdict should be for defendant.

3. When one sells personal property to another and does not deliver possession, but retains it, then the property would be subject to levy under an execution against the seller so long as it remains in his possession, such a sale being, in law, fraudulent and void as against subsequent purchasers and execution creditors.

4. The possession of personal property is *prima facie* evidence of ownership ; and in this case if you believe from the evidence that Woods was in possession of personal property

sufficient to have paid his debt then it was the duty of plaintiff to levy on this property and make an effort to collect his debt, and though Woods might have asserted that it was not his property it would still be the duty of plaintiff to levy upon it and test the question of ownership; and if the evidence shows that plaintiff neglected to do so and has failed to overcome or remove the presumption arising from Woods' possession by counter testimony, the law is with the defendant and your verdict should be accordingly.

The court instructs the jury that in all sales of personal property a visible and actual possession of the property sold is necessary to the validity of the sale, and that until the possession is actually changed from the seller to the buyer, the property may be levied upon under an execution against the seller, and in this case, though you may believe that Woods sold his personal property to Chesnut & Dubois, or to his son James J. Woods, and that the property remained in the possession of Woods until a time when the plaintiff might have obtained judgment and an execution thereon against Woods, then it was the duty of the plaintiff to have levied upon the property; and if the property was sufficient in value to have paid the debt in question, then the jury should find for the defendant.

The jury found for plaintiff $666.66. Motions for new trial, and in arrest of judgment overruled.

The defendant thereupon took this appeal. The questions arising under the assignment of errors, are, first, whether the instrument executed by Woods is a promissory note; second, whether Woods, the maker of that instrument, was a competent witness for the plaintiff as against the assignor; third, whether the court below laid down the rule correctly in regard to the modes of impeaching a witness; fourth, whether the true rule was announced in respect to the necessity for a delivery of personal property to a purchaser to protect him against creditors and subsequent purchasers; fifth, what was the measure of damages on the recovery of the plaintiff, with respect to the rate of interest; sixth, whether it was competent to prove by Woods that he has sold and conveyed his real estate?

Mr. GEORGE W. WALL, for the appellant, contended that the instrument executed by Woods was not a promissory note, but was void for uncertainty, citing *Norwich Bank* v. *Hyde*, 13 Conn. 282; 1 Parsons on Contracts, 28.

It was not competent to prove by Woods that he had conveyed away his land; his deed was the best evidence of that fact, if it existed. 1 Greenl. Ev. 82; *Chalmers* v. *Moore*, 22 Ill. 362.

The jury calculated interest at ten per cent. from the maturity of the paper up to the trial. The instrument was merged in the judgment on the 24th of March, 1863, and the plaintiff should only recover six per cent. on that amount. He should not recover more from the defendant than he could have recovered from the maker.

Mr. B. B. SMITH, for the appellee.

Woods, the maker of the note, was a competent witness as between the assignor and assignee; he had no interest in the suit. 1 Greenl. Ev. §§ 384, 389, 390. Or, if interested at all, his interest was equally balanced, and he was competent. Id. § 420; 1 Phil. Ev. 87.

The true rule was laid down in the first instruction given for the plaintiff below, in respect to the credit a jury is bound to give to the testimony of a witness who is unimpeached. *Robertson* v. *Dodge*, 28 Ill. 161.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

It is insisted, that the instrument read in evidence is not a promissory note, and consequently was not assignable, and was therefore inadmissible in evidence to fix the amount of the recovery. It fails to state in the body of the instrument whether it is for five hundred dollars, or for that number of commodities. The check mark, however, in the margin is for "$500," but in the body it is written "five hundred" without

the addition of the word dollars, or other articles. The check mark being placed in the margin by the parties themselves, at the time the instrument is made, becomes a part of it; and being a part of the note, it may be resorted to as a means of explaining any thing doubtful in reference to the sum named in the body of the note. Whilst it cannot be used to contradict what is clearly and plainly written, still, if from any cause there is uncertainty as to the sum intended, it may be resorted to for the purpose of explaining or removing that doubt. *Riley* v. *Dickens*, 19 Ill. 29. The check mark, then, in this case showed that the sum intended in the body of this note was five hundred dollars.

Again, the maker, in this case, confessed a judgment, in favor of plaintiff below, for five hundred dollars and interest. It thus appears that such was the real amount of the note, and that appellee so understood it at the time. It appears that the maker understood that as the sum, and appellee so received the judgment without objection; and the check mark so fixed the sum, and we can see no reason to reject it as the true amount, or to hold, that it was not assignable as a promissory note. And being a note, it was properly admitted to fix the amount for which appellant, if at all, was liable on his assignment. There was therefore no error in permitting the note and indorsement to be read in evidence.

As between the assignor and the assignee, for all purposes except to impeach the validity of the note, or to prove its payment, we can see no sufficient reason why the maker is not a competent witness. His interest as between them is equally balanced. If his evidence fixed the liability of the assignor, he becomes liable to him for the payment of the note, whilst if it exonerates the assignor he remains liable to the assignee for its payment; and his liability would be as great to the one as to the other, and is therefore equally balanced. Hence there was no error in permitting the maker of the note in this case to testify.

Where appellee averred the insolvency of the maker, and that a suit against him would have been unavailing, it devolved

upon him to prove the fact as averred. And we are of the opinion that it was competent to prove the fact by the maker of the note. And in proving the fact we see no objection to asking him whether he was the owner of real estate as well as personal property.

It is also insisted that appellee's first instruction stated the law incorrectly, and was calculated to mislead the jury in finding their verdict. A witness is usually impeached by proving by other witnesses, that his character for truth and veracity among his neighbors is so bad that he is unworthy of belief. Such is generally understood to be the mode of impeaching a witness. Yet a witness, from his relationship to the parties, his manner and appearance on the stand, his evident bias in favor of one of the parties, might warrant the jury in the conclusion that he was unworthy of belief. This instruction, unless it asserts that a witness may be impeached by these different means, would not announce a correct rule of law. And we think, that unless qualified, the jury would understand that it required an impeachment by the evidence of bad character, and it would have been better to have been modified before it was given, by informing them how a witness may be impeached; still it was in the power of the other party to have removed the objection by asking a properly drawn instruction.

Appellee's third instruction was incorrect, in failing to inform the jury what is required, as between the purchaser of personal property and an execution creditor, to constitute a *bona fide* sale. As between the parties, a delivery is not essential to a complete sale and the passing of the title, where nothing, by the agreement of the parties, remains to be done but for the purchaser to take possession. But as to creditors and subsequent *bona fide* purchasers, the rule is different, as a delivery is indispensable to complete the sale. Before appellee could recover of appellant, on the assignment, he was bound to prove that the maker of the note had no property subject to sale on execution after he could have obtained a judgment. In this case it was insisted, and it was a question for the jury to determine, that in the sales of personal property to which Woods

testified the possession was never delivered to the purchaser, and yet this instruction fails to inform the jury that a delivery of possession was necessary. This was, however, obviated by the instructions given for appellant, which state the law correctly.

The instruction, however, asserts that any sale is presumed to have been made in good faith, and it devolved upon the party denying its validity to show bad faith. This may be true where all the requirements of a valid sale seem to have been observed, but is not where, in proving what is claimed to be a sale, some essential requirement is wanting. A sale of property, we have seen, without a delivery of possession, is valid as between the parties, but is void as to creditors and purchasers. And yet this instruction informs the jury that such a sale is presumed to have been made in good faith, when the law says that it will be presumed to have been in bad faith. This instruction, in case there was no delivery, would still require appellant to introduce other evidence of bad faith; we are, therefore, of the opinion that it was calculated to mislead the jury, and should not have been given.

It is insisted that the jury erred in allowing ten per cent. interest on the face of the note from the time of its maturity until the recovery was had. The contract of assignment is that, if the note cannot be collected by due diligence, or if such diligence would be unavailing, the assignor will refund the assignee his money. And, as he acquires the legal title to the note, and all legal interest which had then or might afterward accrue, his damage for a breach of the contract is the sum which appears to be due on the note with all accrued interest, together with costs paid in prosecuting the maker to insolvency. But, when the assignee has reduced the note to a judgment, and he recovers the sum which appeared to be due when he purchased it, then the judgment and the accruing interest, and the assignee's costs, if unpaid, become the true measure of damages. The assignee, had he collected the judgment, would only have received it with interest, and if the assignor pays the assignee, he has a right to use the judgment, to collect the money. Nor do

we see that the assignee can or should collect more from the assignor than he could from the maker, where no defense has been successfully interposed by the latter.

The judgment of the court below must be reversed, and the cause remanded.

*Judgment reversed.*