GEORGE VAN ZANDT

*v.*

HARVEY L. HOPKINS.

*Filed at Ottawa, June 19, 1894.*

1. PROMISSORY NOTE—*effect of memorandum thereon.* A memorandum, either after the signatures to a bill or note, on the back, or written on the margin contemporaneously with the execution of the instrument, and by agreement of the parties, will form a part of their contract, and bind them the same as if introduced into the body of the instrument.

2. While it is competent for either party to show by parol when and for what purpose a memorandum upon a note was made, in the absence of all testimony on that subject, it will be presumed to have been made contemporaneously with the instrument, and as a part of it, and given the effect as if made in the body thereof.

3. NEGOTIABLE INSTRUMENTS—*requisites thereof.* It is indispensable that all bills of exchange or promissory notes, to be assignable under our statute or at common law, must be certainly payable, and not dependent on any contingency, either as to the event, or the fund out of which payment is to be made, or parties by or to whom payment is to be made.

4. An instrument in the form of a promissory note had the following memorandum written under the signatures of the makers at the time of its execution, viz.: "Ctf. of Stock, No. 113, for 50 shares of stock in the Hopkins Mfg. Co., to be surrendered on payment of this note:" *Held,* that the transaction was a purchase of the certificate of stock, to be delivered simultaneously with the payment of the money named in the note, that is to say, the money was to be paid upon the contingency of the readiness and ability of the payee to deliver the certificate of stock, and that that fact destroyed the negotiability of the obligation.

APPEAL from the Appellate Court for the First District; —heard in that court on writ of error to the Circuit Court of Cook County.

Messrs. HENDERSON & GARY, for the appellant:

Cited the following cases upon the effect of a memorandum written upon some part of a promissory note, viz.: *Prius* v. *South Branch Lumber Co.*, 20 Ill. App. 236; *Costello* v. *Crowell*, 127 Mass. 293; *Blake* v. *Coleman*, 22 Wis. 415; *Smilie* v. *Stevens*, 39 Vt. 315; *Considerant* v. *Brusbane*, 14 How. Pr. 487; *Cummings, etc.,* v. *Gassett,* 19 Vt. 308; *Drill* v. *Crick*, 1 M. & W. 231.

As to memoranda which will not render a note non-negotiable. See: *Taylor* v. *Curry*, 109 Mass. 36; *Heard* v. *Dubuque Co. Bank,* 8 Neb. 10; *White* v. *Smith*, 77 Ill. 351.

As to right of purchaser of note not affected with notice of defense. *Comstock* v. *Hannah*, 76 Ill. 530; *Swift* v. *Smith*, 12 Ohio, 442; *Hotchkiss* v. *Nat. Bank*, 21

Wall. 359; *Murray* v. *Gardner*, 2 Wall. 110; *Goodman* v. *Simons*, 20 How. 343; *Murray* v. *Beckwith*, 81 Ill. 43; *McGee* v. *Badger*, 44 N. Y. 247.

A note is not rendered unnegotiable because it imports that a collateral security has been given: Byles on Bills, 101, and cases there cited. *Wise* v. *Charlton*, 4 Ad. & Ellis, 786.

Mr. C. C. BONNEY and Mr. LYMAN PAINE, for the appellee:

Any language put upon any portion of the face or back of a promissory note, which has relation to the subject-matter of the note, by the maker of it before delivery, is a part of the contract. *Costello* v. *Crowell*, 127 Mass. 293; *Blake* v. *Coleman*, 22 Wis. 416; *Leeds* v. *Lancashire*, 5 Maule & S. 25; *Johnson* v. *Heagen*, 23 Me. 329; *Heywood* v. *Perrin*, 10 Pick. 228; *Cook* v. *Kelsey*, 19 N. Y. 415; *Wheelock* v. *Freeman*, 13 Pick. 165; *Palo Mfg. Co.* v. *Parr*, 8 Neb. 379; 2 Parsons on Notes and Bills, page 539; 1 Daniel on Neg. Insts., sec. 149; 1 Randolph on Com. Paper, 129; Chitty on Bills, 155; Byles on Bills, 100.

A promissory note must be payable absolutely and at all events, and not depend on a contingency, in order to come within the definition of a promissory note, so as to be negotiable. *Smilie* v. *Stephens*, 39 Vt. 315; *Lowe* v. *Bliss*, 24 Ill. 168; *Fletcher* v. *Thompson*, 55 N. H. 308; *McClellan* v. *Coffin*, 93 Ind. 456; *Kelley* v. *Hemmingway*, 13 Ill. 604; *Smalley* v. *Edey*, 15 id. 324; *Canadian Bank* v. *McCrea*, 106 id. 281; *Beezley* v. *Jones*, 1 Scam. 34; *Gillilan* v. *Myers*, 31 Ill. 525; *Hunt* v. *Divine*, 37 id. 137; *Kingsbury* v. *Wall*, 68 id. 311; *Husband* v. *Epling*, 81 id. 172; *Baird* v. *Underwood*, 74 id. 176; Story on Prom. Notes, sec. 22; 1 Daniel on Neg. Insts., secs. 41, 45; 1 Parsons on Notes and Bills, p. 48.

Mr. JUSTICE BAKER delivered the opinion of the Court:

On August 15, 1882, the appellees executed and delivered to one H. B. Schuler the following instrument:

"$5,000.                    CHICAGO, August 15, 1882.

On the first day of July next after date, we promise to pay to the order of H. B. Schuler five thousand dollars at Commercial National Bank, with interest at six per cent. per annum.   Value received.        HARVEY L. HOPKINS,

DANIEL B. WHITACRE,

No....., Due......                      WM. F. TUCKER.

Ctf. of stock, No. 113, for 50 shares of stock of the Hopkins Manufacturing Co., to be surrendered on payment of this note."   Upon the back of said instrument was the following endorsement: "Pay to the order of George Van Zandt.   H. B. Schuler."

The assignee brought suit on the instrument in his own name, in the Circuit Court of Cook county, against appellees, and obtained judgment for the sum of $6,018, and costs of suit.

On appeal to the Appellate Court, that judgment was reversed, and plaintiff below prosecutes this appeal.

The only question in the case is whether the paper sued on is assignable under our statute, so as to vest the legal title in the assignee.   In other words, whether it is a negotiable instrument.   And the decision of that question turns upon the effect to be given to words, "Ctf. of stock, No. 113, for 50 shares of stock," etc, written after the signatures. There seems to be no substantial conflict in the authorities, that a memorandum, either after the signatures to a bill or note endorsed on the back or written on the margin "contemporaneously with the execution of the instrument, and by agreement of the parties, will form a part of their contract, and bind them the same as if introduced into the body of the instrument."   Daniels on Negotiable Instruments, vol. 1, p. 120, says: "It seems that the purport of

the instrument is not only to be collected from the four corners but from the eight corners, a memorandum on the back affecting its operation being regarded the same as if written on its face." See: *Corgan* v. *Frew*, 39 Ill. 31, as recognizing the rule that a memorandum on the margin becomes a part of the instrument.

While it is competent for either party to show by parol when and for what purpose the memorandum was made, in the absence of all testimony on that subject, it will be presumed to have been made contemporaneously with the instrument and as a part of it, and given the effect above stated. Daniels on Negotiable Instruments, vol. 1, p. 122, and cases cited. The testimony in this case shows, that the memorandum was in fact made before signing, and intended to be a part of the contract.

We see no escape from the conclusion, that the negotiability of the instrument must be determined precisely as though those words in the memorandum had been written over the signatures of appellees.

So far from the oral testimony tending to show, that the payee of the instrument was simply to hold the certificate of purchase as collateral security for the payment of the note, it shows directly the contrary. D. B. Whitacre testified (and his evidence is uncontradicted): "This memorandum on the note was made before signing, it is in my handwriting, also the body of the note. I received nothing for signing the note, nor the other makers, that I ever heard of. At that time Mr. Schuler wanted to get out of the Company. He could get some business at St. Louis that would be better. He had a sick child, and other excuses. He wanted to get out of paying for his stock, but finally agreed, if we would buy it back, he would pay the money; if we would give him notes payable in a year, that he would then pay for his stock, for these fifty shares. I placed this memorandum at the foot of the note. I don't know any other

reason than it says there, as collateral security. We were to pay the money for it in a year. He had bought and paid for it, and wanted us to take it back, buy it back. In fact, we were forced to buy it back almost at that time, because we had contracted debts, and must have the money to pay them. At the time the memorandum was made, H. B. Schuler was the owner of the certificate, and the makers of the note undertook to buy it from him the next year."

The transaction was a purchase of the certificate of stock to be delivered simultaneously with the payment of the money. That is to say, the money was to be paid upon the contingency of the readiness and ability of the payee to deliver the certificate of stock, and that fact destroyed its negotiability.

It was said in *Kingsbury* v. *Wall*, 68 Ill. 311: "It is indispensable that all bills of exchange or promissory notes, to be assignable under our statute or at common law, must be certainly payable, and not dependent on any contingency either as to the event or the fund out of which payment is to be made, or parties by or to whom payment is to be made."

The rule thus announced is in harmony with all the authorities.

Mr. Daniels, in his work on Negotiable Instruments, says: "The instrument must be payable unconditionally, and at all events in order to be negotiable. If the order or promise be payable, provided terms mentioned are complied with, it is not a bill or note, and likewise if payable provided a certain act be not done," etc. Vol. 1, p. 34. And again he says: "So when the certificate is payable on the return of this certificate it is negotiable, because that merely requires, as in the case of a note, the return of the evidence of the debt, but if there be added, 'and the return of my guaranty of a certain note,' it would engraft a

collateral condition, which would defeat the negotiability of the instrument." Vol. 1, p. 36.

When the memorandum is read into the body of this instrument, it becomes a contract between the party to whom it is made payable and those who signed it, that the latter would pay the former the sum of money mentioned, and that he at the same time would deliver to them the certificate of stock.

As said in *Cook* v. *Satterlee*, 6 Cowan, 108, cited in the opinion of the Appellate Court: "The payment of the money and taking up the certificate of stock were to be simultaneous acts. The money was payable on a contingency, viz.: the surrender of the certificate of stock." To the same effect are *Smilie* v. *Stevens*, 39 Vt. 315; *Benedict* v. *Cowden*, 49 N. Y. 396, also cited by the Appellate Court. On principle, the case is not distinguishable from *Kingsbury* v. *Wall, supra.*

We concur in the conclusion reached by the Appellate Court, and its judgment will be affirmed.

*Judgment affirmed.*