## North Avenue State Bank, Appellant, v. Charles F. W. Nichols, Appellee.

### Gen. No. 33,110.

Opinion filed April 17, 1929.   Rehearing denied May 1, 1929.

*Follansbee, Shorey & Schupp, for appellant; Mitchell D. Follansbee, Clyde E. Shorey and Ronald N. Brown, of counsel.

Rosenthal, Kurz & Tiedebohl, for appellee; James Rosenthal, Howard M. Oberndorf and Harris F. Williams, of counsel.

Mr. Presiding Justice Holdom delivered the opinion of the court.

The plaintiff Bank sued the defendant Nichols on the following instrument in writing with the indorsements thereon, viz.,

"$11,057.97.

Chicago, Illinois, September 1st, 1923.

"After date, and subject to the terms of a certain Creditors' Agreement of September 1, 1923, I promise to pay to the order of North Avenue State Bank, Eleven Thousand Fifty-seven and 97/100 Dollars at office of James Rosenthal, Chicago, Illinois. Value received.

No. 88                              C. F. W. Nichols.

(On Reverse Side)

"9/1/26 Credit Acct. This note $221.16
8/28/25 Credit Acct. This note $276.45
5/3/24 Credit Acct. This note $276.45"

The declaration consisted of the common counts to which a copy of the foregoing was attached. Defendant pleaded the general issue and several other pleas, which culminated in a fourth amended plea, to which plaintiff interposed a general demurrer. The plea last aforesaid superseded, with the exception of the plea of the general issue, the three preceding special pleas. An affidavit of merits supporting the fourth amended plea was likewise filed. The demurrer to the fourth amended plea was overruled, plaintiff electing to stand by its demurrer a judgment of *nil capiat* and for costs

was entered, and plaintiff prosecutes this appeal in an effort to reverse that judgment.

There is a question raised upon the bill of exceptions, which we ignore, preferring to rest our opinion upon the merits of the plea rather than to affirm the judgment for the alleged irregularity in the bill of exceptions.

The sole and only question before us for review, presented by the record, is the correctness, or not, of the court's ruling on the demurrer to the aforesaid amended fourth plea, which is as follows:

"And the defendant, by Rosenthal, Kurz & Tiedebohl, his attorneys, comes and defends the wrong and injury when, etc., and says that he did not undertake and promise in manner and form as the plaintiff has above thereof complained against him; and of this he puts himself upon the country, etc.

"And for a further plea in this behalf, the said defendant, says that the plaintiff ought not to have its aforesaid action against him, the said defendant, because he says that the note sued upon by the plaintiff herein and executed by the defendant herein on September 1st, 1923, was given subject to the terms of a certain creditors' agreement entered into on the 1st day of September, A. D. 1923, and made a part of said note by being incorporated therein by reference, which said note in words and figures is as follows:"

(Here setting said note out in *haec verba*).

"Defendant further says that said instrument was given conditioned upon and subject to the terms of a certain Creditors' Agreement entered into the First day of September, 1923, which said agreement was the one referred to in said note, which said agreement is as follows, to-wit:"

(Here is set out a letter referred to in the agreement from E. H. Kastor, to all whom it may concern.)

Said plea continues:

"The said E. H. Kastor submitted to the unsecured creditors of the said Charles F. W. Nichols Company

the instrument in writing above set out which said proposition of such E. H. Kastor was accepted in writing by a large majority of the unsecured creditors of Charles F. W. Nichols Company whose claims aggregated in an amount over Two Hundred Fifty Thousand ($250,000.00) Dollars, which acceptance in writing was in most instances appended to said proposition of said E. H. Kastor, and is as follows:

" 'We, whose names are undersigned, have unsecured claims against Charles F. W. Nichols Company, a corporation. Considering what is said in the foregoing letter by Mr. Kastor, and also considering the fact that we now have no claims against Charles F. W. Nichols personally, and believing the suggestions made by Mr. Kastor are for our best interest and for the best interests of all we agree to accept and do accept the proposition as outlined by Mr. Kastor; in token of which we have signed our names hereto, giving the amounts of our respective claims opposite our signatures. We accept the notes of Mr. Nichols and shall look to him only for payment thereof.'

"That the said North Avenue State Bank, a corporation, plaintiff, herein, was one of the unsecured creditors of the said Charles F. W. Nichols Company, a corporation, at the time the agreement of September 1st, A. D. 1923, was entered into and the note herein sued upon was executed; that as such unsecured creditor, the plaintiff herein and other unsecured creditors of the said Charles F. W. Nichols Company, did not sign the said form of acceptance which as hereinbefore stated was signed by a majority of the unsecured creditors, but did accept the aforesaid proposition and the note herein sued upon in accordance with and subject to the terms of said Creditors' Agreement.

"That in pursuance of the terms of said Creditors' Agreement, on to-wit, the 1st day of November, A. D. 1923, a certain Trust Agreement was entered into for

the purpose of carrying out the provisions of said Creditors' Agreement. Said Trust Agreement provided for the appointment of Walter A. Strong, D. M. Deininger and James Rosenthal, all of Chicago, Illinois, to act as trustees. That said named parties accepted the appointment as Trustees under said Trust Agreement of November 1st, 1923 and entered into their duties as Trustees to carry out the purposes as set out in said Trust Agreement, which fully provided for the carrying out of the Creditors' Agreement entered into September 1st, 1923, which said trust agreement is as follows:

## TRUST AGREEMENT.

"(a) WHEREAS, Charles F. W. Nichols Company, a corporation organized and existing under the laws of the State of Illinois, has been and is in financial difficulties, and

"(b) WHEREAS, H. W. Kastor & Sons Advertising Company, a Missouri corporation licensed to do business in Illinois, E. H. Kastor, of Chicago, Illinois, Charles F. W. Nichols Company, a corporation, of Chicago, Illinois, and Charles F. W. Nichols, of Chicago, Illinois, did, on the first day of September, 1923, enter into a certain agreement in accordance with a certain proposition submitted to the creditors of the Nichols Company by E. H. Kastor, the terms of which agreement have been accepted by a very substantial part of the creditors of the Nichols Company, and

"(c) WHEREAS, it was stipulated in the said agreement of September 1st, 1923, that all of the unsecured claims against the said Nichols Company should be assumed and taken over by the said Charles F. W. Nichols, personally, and that the said Nichols Company should be released of all unsecured debts and claims of creditors existing prior to September 1st, 1923, all such unsecured creditors to accept the personal notes of the said Charles F. W. Nichols, in accordance with

and under the terms of the said agreement of September 1st, 1923, and

"(d) WHEREAS, it was provided in said agreement of September 1st, 1923, that 5% of the gross amount of all the billings done by the Charles F. W. Nichols Company from and after the first day of September, 1923, shall be set aside and that Twenty-five Thousand ($25,000.00) Dollars per year shall be paid in monthly installments to the said Charles F. W. Nichols for his services, and the remainder of such 5% should be turned over to a trust fund for the purpose of liquidating and paying off the said notes given by the said Charles F. W. Nichols in the assumption of the unsecured debts of the said Charles F. W. Nichols Company, as such debts existed prior to the first day of September, 1923, and

"(e) WHEREAS, it was agreed by and between all of the parties to the said agreement of September 1st, 1923, and the unsecured creditors of the said Charles F. Nichols Company, existing prior to September 1st, 1923, that the life of the said Charles F. W. Nichols should be insured in the sum of One Hundred Thousand ($100,000.00) Dollars for the benefit of the said trust fund, the premiums upon such insurance to be paid by the Nichols Company and not out of the said trust fund, and

"(f) WHEREAS, it has been agreed by the said Kastor Company, the said Nichols Company, the said Kastor, the said Nichols and a very large number of the said creditors, that Walter A. Strong, D. M. Deininger and James Rosenthal, all of Chicago, Illinois, may act as trustees of the said trust fund for the benefit of all of the creditors of the said Nichols Company, and

"(g) WHEREAS, the said Walter A. Strong, D. M. Deininger and James Rosenthal have signified and do

hereby signify their willingness to accept the said trust and act as such trustees in behalf of all of the said creditors:

"(h) Now, THEREFORE, it is agreed as follows:.

"(1) After the deduction of the payment of the salary of twenty-five thousand ($25,000.00) Dollars per annum to the said Nichols, which salary is to be paid in.equal monthly installments, the Nichols Company shall turn over to the trustees the balance of the said five (5%) per cent, computed upon the advertising billings, as provided for in said agreement of September 1, 1923. The said trust fund, as the same is received, shall be deposited by the trustees in such bank or banks as the trustees shall from time to time determine.

"(2) The said trust fund shall be distributed pro rata to the creditors of the Nichols Company, according to their respective claims, semi-annually, after deducting all necessary expense in connection with the administration of the trust, or such distribution shall be oftener if the trustees shall so elect.

"(3) A list of all the creditors who are to participate in such trust fund, showing their names and addresses and the respective amounts due to each of them, shall be prepared and certified as correct by the said Nichols Company and the said Nichols, and shall be delivered to the trustees as soon as possible after the execution of this trust agreement, and such list must correspond with the evidence of indebtedness given by the said Nichols in pursuance of the agreement hereinbefore referred to, and such list shall control in the distribution of said trust fund unless the trustees shall find said list to be incorrect, in which event the trustees may correct the same.

"(4) Said trustees shall have the right and power to use so much of the said trust fund for such expenses as they may determine necessary in the administration

of said trust, and they shall be the sole judges of the necessity of incurring such expenses and the amount thereof.

":(5) The said trustees shall have the right and power to pay the claim of any creditor or creditors which is less than two hundred ($200.00) dollars out of the said trust fund in full if they think it advisable and best for the interests of all parties concerned, and they shall also have the right and power to compromise or settle any claim for less than the amount thereof if in their opinion they consider it for the benefit of and to the interest of all the parties concerned, and such payments, compromises or settlements said trustees may make at their discretion at such times as they think advisable, and they shall be the sole judges as to whether such payments, compromises or settlements are for the benefit or advantage of all concerned.

"(6) All payments out of said trust fund shall be made by check upon the depository or depositories of said fund in such manner and upon such signatures as the said trustees may from time to time determine.

"(7) The trustees shall not be required to verify the correctness of the accounting by the said Nichols Company as to the amount or amounts turned into the trust fund by the said Nichols Company, but shall have the right to verify the same from the books and records of the said Nichols Company, and for such purpose shall have the right to employ such public accountant or accountants, or expert accountant or accountants as the said trustees may select at the expense of the said trust fund, and shall have the right to accept the report of such accountant or accountants which may be furnished to said trustees by the said Nichols Company relating to such accounting, and the said Nichols Company agrees to furnish to said trustees semi-annually, or oftener if requested, an accountant's report as to the amount due or to become due the said

trust fund, and the said trustees shall be held accountable only for the money turned over to the said trust fund by the said Nichols Company, or from any other source.

"(8)  The trustees shall not be liable for errors of judgment in acquiring, managing, holding or transferring any of the property of this trust, nor for any act or omission to act performed or omitted by them in the execution of this trust in good faith, nor shall they nor any or either of them be liable for the acts or omissions of each other, or of any agent or servant appointed by or acting for them, and they shall not be obligated to give any bond to secure the due performance of this trust by them, and said trustees shall not be liable individually or collectively in any event, except for their own wilful and intentional breaches of the said trust.

"(9)  In the event of the resignation of any of said trustees, or the inability of any trustee to act, or in the event of the death of any of the trustees, the survivor, or surviving trustees shall have the right to fill such vacancy.

"(10)  In case of the death of the said Charles F. W. Nichols the said trustees shall collect the amount due them as such trustees under any insurance policy or policies then in force for such purpose on the life of the said Nichols, and after deducting the expense of collecting such insurance money and procuring the same for the trust fund, such amount as may be so obtained and brought into the said trust fund shall be distributed in the same manner as herein provided for the distribution of the said trust fund, and the said Nichols Company does hereby agree to turn over to the said trustees, during the life of said Nichols, such insurance policies as may be taken out in favor of the said trustees as beneficiaries, and will from time to time turn over to the said trustees the premium receipts

showing the payments of premiums upon such policies, but the said trustees shall not be liable or responsible for the failure of the payment of premiums upon such policies, nor for the cancellation of any such policies, but may in case of neglect or failure to pay the premiums on any such policies pay the same out of the said trust fund, and recover the amount so paid from such party or parties that have undertaken the obligation to pay the same, and the said trustees may, if in their discretion they deem it advisable and for the best interests of the creditors, obtain and accept the cash surrender value of the said policies for the benefit of the said trust fund.

"(11) In the event of the death of the said Charles F. W. Nichols before the said notes given by the said Nichols, in the assumption of the unsecured debts of the Nichols Company, have been fully paid, the five per cent of the gross amount of the Nichols Company's billings over and above Twenty-five Thousand ($25,-000.00) Dollars per year shall continue to be turned over to the said trust fund until all of said notes of the said Nichols have been paid.

"(12) The said trustees shall act until the said creditors of said Nichols Company shall be paid in full, unless by reason of some unforeseen contingency no money can be further obtained or collected under this agreement, in which event the balance of the trust fund on hand, after the deduction of all necessary expenses, shall be distributed among those entitled thereto, and upon such distribution of such balance of the trust fund this trust shall be terminated and the trustees discharged.

"(13) The trustees shall have the power to determine all questions and doubts arising in relation to any of the provisions hereto, and after such determination, whether made on a question actually raised or implied in the actions and proceedings of the trustees, shall be conclusive and shall bind all persons interested herein.

"(14)   The act or acts of the majority of the trustees shall be binding upon all the trustees in the performance and carrying out of this trust agreement.

"(15)   This agreement shall be binding upon all of the parties hereto and their respective heirs, legal representatives, successors and assigns.

"IN WITNESS WHEREOF, the said parties hereto have executed this agreement this first day of November, 1923.

H. W. KASTOR & SONS ADVERTISING COMPANY.

By E. H. KASTOR, Secretary & Treas.

Attest:

E. H. KASTOR
   Secretary.

CHARLES F. W. NICHOLS COMPANY,

By CHARLES F. W. NICHOLS, President.

Attest:

| WALLACE MOYER, | E. H. KASTOR |
| Secretary. | CHARLES F. W. NICHOLS |
| | WALTER A. STRONG |
| | D. M. DEININGER |
| | JAMES ROSENTHAL. |

"That said Trustees have, from the date upon which said Trust Agreement was entered into to the present date, acted as Trustees, and are still acting as Trustees under said Trust Agreement. That the plaintiff herein before accepting said instrument sued upon was duly advised of the terms of said trust agreement and a copy thereof was delivered to it.

"That the plaintiff, together with the other unsecured creditors of the said Charles F. W. Nichols Company, accepted and agreed to the terms of the said Trust Agreement, and the said plaintiff and the other unsecured creditors of the said Charles F. W. Nichols Company agreed to look solely to the said Trust Fund so created under and by virtue of said Trust Agreement for the payment of the notes so delivered to

them respectively, all of which notes were of the same tenor and effect as the note herein by the said plaintiff sued upon.

"That the said Trustees have paid to the plaintiff herein under and by virtue of the said Trust Agreement out of the trust fund so created, the following amounts to be applied upon the instrument herein sued upon, which amounts have been accepted by the plaintiff and are set out in the plaintiff's declaration as credits upon said instrument, to-wit:

May 3rd, 1924......................$276.45
August 28th, 1925.................. 276.45
September 1st, 1926................ 221.16

"That the Trustees at the time of the payment of said amounts to said plaintiff herein paid a like proportioned amount to the other unsecured creditors and in the distribution of the trust funds so created, paid such unsecured creditor in like proportion to their respective claims and paid no more to any one said unsecured creditor than such like proportion.

"That the plaintiff herein accepted the instrument sued upon conditioned upon and subject to the terms of the creditors' agreement and said Trust Agreement herein referred to.

"That it was the purpose and intent of the said Creditors' Agreement and the said Trust Agreement so entered into and accepted by and agreed to by the said unsecured creditors of the said Charles F. W. Nichols Company, a corporation, that the unsecured creditors, of which the plaintiff was one, by accepting and agreeing to said Creditors' Agreement and said Trust Agreement, will look solely to the said Trust Fund for the payment of the said instruments so delivered to and accepted by the unsecured creditors, and by said plaintiff herein who was one of them, and that said notes executed by the said Charles F. W. Nichols to the said unsecured creditors of which the plaintiff

herein was one, were executed simply and solely for the purpose of evidencing the respective indebtedness due to the respective unsecured creditors of the said Charles F. W. Nichols Company, all of which was known to and agreed to by said plaintiff and the other unsecured creditors, and accordingly, the said plaintiff must look to the Trust Fund created under the Trust Agreement which was drawn pursuant to the Creditors' Agreement and in accordance with same, for its payment of said instrument sued upon, and that the said Charles F. W. Nichols, the defendant herein, is not personally liable to the said North Avenue State Bank, a corporation, plaintiff herein, upon the said instrument sued upon herein.

"And this defendant is ready to verify.

"WHEREFORE, he prays judgment if the plaintiff ought to have its aforesaid judgment against him, etc."

The demurrer admits the truth of the averment of the plea that the plaintiff before accepting the instrument sued upon was duly advised of the terms of said trust agreement and that a copy thereof was delivered to it; and further that plaintiff, together with the other unsecured creditors of said Nichols, accepted and agreed to the terms of the trust agreement and agreed to look to the trust fund created by the agreement for payment, and furthermore that the trustees paid to the plaintiff, by virtue of said trust agreement, out of the trust fund so created, the several amounts at the several dates indorsed upon the back of the note in suit, and that a like amount was paid to all of the other unsecured creditors of said Nichols, and that plaintiff accepted the instrument sued upon subject to the terms of the trust agreement.

Plaintiff argues for reversal:

1. The construction and interpretation of the written documents set out in defendant's fourth amended

pleas and the legal effect thereof are questions of law for the court.

2. The intention of the parties to a written contract must be gathered from the language the parties have used to express that intention, and, in the absence of some ambiguity, no evidence is admissible to vary the meaning of the terms used.

3. A written contract purporting to be a complete and final statement of the whole transaction affords the only evidence of its terms and conditions.

4. A demurrer admits all facts well pleaded but not the pleader's conclusions of fact and law.

While we have no fault to find with these contentions as axiomatic principles of law, we are unable to discover in this record that any of them have been infringed in the rulings of the court upon the demurrer to the fourth amended plea, and that so far as we have been able to discover these axiomatic principles of law were not departed from by the trial judge in his decision upon such demurrer.

The note sued upon is the contract of the parties and by it each of them must be and is bound, and the liability of the maker is environed within the four corners of the document. Naught may be added to nor detracted from it. The trust agreement set out in the fourth amended plea is the creditors' agreement referred to of date September 1, 1923, in the document in suit. A copy of that trust agreement was delivered to the plaintiff at the time of the execution and delivery of the document in suit, and accepted by plaintiff, and thereafter as appears from the three indorsements upon the back of the document, three payments were paid to and accepted by plaintiff from the trust fund created under the trust agreement. The acceptance of these three payments stands admitted by the plaintiff's demurrer. Plaintiff in effect ratified, if such was necessary, the terms of the note by accepting the fore-

going three payments from the trust fund created by the terms of the trust agreement. This *dicta* is supported by *Bradley v. Marshall,* 54 Ill. 173, in which a demurrer to a similar plea as in the case at bar was sustained and the court said:

"We do not concur in the objections taken to this plea. The note, and the written agreement as to the mode in which it should be payable, having been executed together, are to be construed as one agreement, and the plea shows performance, or readiness to perform, on the part of the defendant. It is said the note was payable to Beaver & Co. and the plea sets up an agreement made with Beaver alone. But the plea avers the consideration for the note moved solely from Beaver, and that the note belonged solely to him. Even then if the name 'Beaver & Co.' used in the note indicated a firm consisting of Beaver and some other person, yet, if a suit had been brought in the name of such firm as payee, the firm would have been bound by the agreement, and its assignee, after maturity, is equally bound."

And for doing the contrary to what the court did in the instant case in overruling the demurrer, the judgment was reversed. *Heldman v. Gunnell,* 201 Ill. App. 172; *Davis v. McVickers,* 11 Ill. 327; *Van Zandt v. Hopkins,* 151 Ill. 248; *Gould v. Magnolia Metal Co.,* 207 Ill. 172; *Bradshaw v. Combs,* 102 Ill. 428; *Toledo Computing Scale Co. v. Tyden,* 141 Ill. App. 21; *Kraft v. Hora,* 159 Ill. App. 363.

While it is true that some of the unsecured creditors signed the trust agreement, which plaintiff did not, yet it is equally bound by the agreement by reason of its recitation in the document in suit and the delivery of a copy thereof to the plaintiff and complying therewith, as we have before said, by accepting three payments from the trust fund. The suit before us is between the maker and the plaintiff, and therefore the rights of

third parties are not involved. The recitation in the document in suit regarding the trust agreement, charged plaintiff with knowledge of the contents thereof, and the delivery of a copy thereof to plaintiff gave him actual knowledge of its contents, and by accepting the three payments thereunder, ratified the same. If plaintiff had not acquiesced in the trust agreement by receiving the three payments thereunder without signing the trust agreement, the question might have arisen as to whether it was bound thereby. It is a familiar principle of law that the ratification of an agreement will be as effective as if such agreement was in the first instance signed by the party sought to be bound thereby. It therefore follows that during the time the trust agreement remained in force plaintiff must look to the funds realized under the trust agreement for payment, and in the meantime cannot maintain an action thereon. Plaintiff having acquiesced in the trust agreement and having received payments thereunder covering a period of over five years, is not permitted to repudiate an agreement which he has for so long a time accepted and ratified. *National Time Recorder Co. v. Feypel,* 93 Ill. App. 170; *Globe Wernicke Co. v. Siegel Meyers School of Music,* 209 Ill. App. 529.

The words "after date" in the instrument in suit are controlled by and must be construed in accord with the creditors' agreement of September 1, 1923, therein referred to. Otherwise "after date" would in law mean on demand, but the words of the so-called note nullify any such legal presumption.

The circuit court did not err in overruling the demurrer of the plaintiff to defendant's fourth amended plea, consequently its judgment of *nil capiat* and for costs is affirmed.

*Affirmed.*

Wilson and Ryner, JJ., concur.