(No. 27767.—

*In re* ESTATE OF MINNIE E. FELDMAN.—(GERTRUDE VAN ZELE, Exrx., Appellant, *vs.* JAY J. SMALTZ, Exr., Appellee.)

*Opinion filed May 16, 1944—Rehearing denied September 18, 1944.*

JOSEPH L. SHAW, of Geneseo, and JOHN H. ARM-
STRONG, of Ottawa, for appellant.

J. J. LUDENS, of Sterling, and JOHN A. FLETCHER,
of Morrison, for appellee.

Mr. JUSTICE FULTON delivered the opinion of the court:

The construction of an ineptly drawn promissory note
is here involved, the same having arisen through the filing
of a claim thereon against the estate of the deceased maker.

A hearing before the county court of Whiteside county resulted in the disallowance of the claim, which action was approved by the circuit court, and its judgment was affirmed by the Appellate Court. The case is now before this court by virtue of the granting of a petition for leave to appeal. In addition to the facts stated by the Appellate Court, we deem it necessary to consider certain other matters disclosed by the record for a proper understanding of the issues and how the same arose.

Under date of March 1, 1931, Minnie E. Feldman executed and delivered her promissory note for $3000 payable to her son, James C. Feldman. We have examined the original note certified with the record and find it to be upon an ordinary printed form which is reproduced herewith, the part in standard type being the printed words of the note while the italics represent the filled-in portions written with ink:

---

Morrison, Ill. *March 1st* 1931 No._____
*On or Before* ~~after~~ date we jointly and severally promise to pay *James C. Feldman* or order, the sum of *$3,000.00 Three Thousand & 00/000* DOLLARS, with interest at the rate 7 5 per cent. per annum from *Date* until paid, payable annually. Value received. Both principal and interest payable at the SMITH TRUST & SAVINGS BANK, Morrison, Illinois. [Other provisions follow with regular power of attorney to confess judgment.]
*MINNIE E. FELDMAN*

Due *Mar. 1,* 1939 _____

---

The payee, James C. Feldman, continued to hold this note until May 11, 1932, on which day he pledged it to Leon Van Zele as collateral security for a $1500 note executed by himself and one Charles E. Ward to said Van Zele as part payment for certain premises known as the "Red Mill" in Geneseo, Illinois. This transaction was fully covered by a written contract of the same date and in accord-

ance therewith the following endorsement was made on the back of the $3,000 note:

"*James C. Feldman*
assigns to
*Leon Van Zele*"

Apparently Feldman and Ward were unable to pay the $1500 note when it came due on January 2, 1933, or otherwise complete the purchase of the mill property, whereupon Van Zele gave them a written release under date of January 6, 1933.

On the following day, January 7, 1933, a new contract relative to the same mill property was executed by Van Zele and Hazel Feldman, wife of James C. Feldman. The total purchase price was the same, part of which was again represented by a $1500 note, this time signed by Hazel Feldman and due January 2, 1934. Under this contract the $1500 note was again collaterally secured by the $3000 note in question and Van Zele continued to hold possession of it under the following endorsement which the parties stipulated was made on said 7th day of January, 1933: ·

"I hereby assign the within note to *Hazel Feldman* subject, however, to the interest and right therein of Leon Van Zele, who now holds the said note as collateral security for a debt due him from Hazel Feldman. The within note is now in the possession of said Leon Van Zele, who has permitted me to make this endorsement. When Hazel Feldman has paid her note to said Leon Van Zele he is to surrender the within note to her.

*James C. Feldman.*"

No other endorsement appears on the note.

In August, 1933, James C. Feldman and a brother were adjudged bankrupts, individually and as copartners doing business as Feldman Brothers. Their schedules showed large amounts due Minne E. Feldman for rents and other items, but the $3000 note was not listed as an asset. Nevertheless, in adjusting accounts between James C. Feldman and Minne E. Feldman, the referee charged her with the

amount of this note and credited a like sum on the claim ultimately allowed her against the bankrupt. The parties hereto stipulated that Van Zele was ordered to appear before the referee on October 3, 1933, and bring with him the $3000 note in question as well as the contracts and release concerning the mill property; that he there testified about said documents and left them with the referee for further examination as exhibits. What Van Zele testified to is not shown but he died on December 26, 1933, and the above-mentioned findings of the referee were not announced until June 13, 1934. However, the referee returned the note and other exhibits, intact, to Van Zele.

Minnie E. Feldman died February 20, 1941, and on June 25, 1941, claim was made against her estate by the executrix of Leon Van Zele, deceased, for the $3000 principal of said note plus interest of $1362.75. The executor of Minnie E. Feldman's estate filed objections to the claim, asserting in substance: (1) That the action did not accrue within 10 years of the day the claim was filed because the note became due on the date it bears, March 1, 1931; (2) that the note is not a negotiable instrument and the alleged due date of March 1, 1939, appearing thereon is not a part of it; (3) that the note was discharged in the bankruptcy proceedings of James C. Feldman of which Van Zele was aware; and (4) that the claimant was guilty of *laches* in attempting to collect upon this note. These contentions were adopted by the county and circuit courts and likewise approved by the Appellate Court as stated above. There being no disputed questions of fact in the record, the problems for solution are purely questions of law.

The crux of this case is aptly summarized by the Appellate Court as, "What is the real due date of this note?" If it became payable March 1, 1931, or thereafter upon demand, Van Zele was not a holder in due course because the negotiation by James C. Feldman on January 7, 1933,

or even May 11, 1932, was an unreasonable length of time after issuance. See section 53, Negotiable Instrument Law. (Ill. Rev. Stat. 1943, chap. 98, par. 73.) And if Van Zele was not a holder in due course then the present claim is barred under sections 11 and 58 of the Negotiable Instrument Law by the same defense which would be available between the original parties, *i.e.*, the Feldman bankruptcy setoff. On the other hand, if the note did not mature until March 1, 1939, Van Zele became a holder in due course to the extent of his lien as further provided by section 27 of the same statute. The exact question here involved is new to this court and the facts unique.

It will first be observed from the note that it is dated March 1, 1931, and then provides, *"On or Before ~~after~~ date we jointly and severally promise to pay,"* etc. If this was all that appeared with reference to maturity it would become a demand note under section 7 of the Negotiable Instrument Law. (Ill. Rev. Stat. 1943, chap. 98, par. 27.) The difficulty arises, of course, when we observe in the lower left-hand corner the words and figures, "Due *Mar. 1, 1939.*" The record is barren of any evidence as to when this due-date blank was filled in and, accordingly, we must proceed upon the well-known presumption that it was done contemporaneously with the execution of the instrument. (*Van Zandt* v. *Hopkins,* 151 Ill. 248; 7 Am. Jur., Bills and Notes, sec. 53.) Lack of such proof leaves much to be desired in the interests of certainty but that is no basis for disregarding the legal presumption, particularly in the absence of any intimation to the contrary either by way of evidence or by arguments in the briefs of counsel. We certainly cannot disregard such presumption when the rights of a third party as a possible holder in due course are involved, which is the situation here.

From a reading of the cases cited by the court below and in briefs of counsel, together with those found upon our own research we appear to be faced with irreconcilable

decisions and principles of law. For example, as a corollary, if not a part, of the above-stated presumption we have the accepted rule that the effect of a promissory note is to be gathered from everything appearing thereon with the consent of the parties. (7 Am. Jur., Bills and Notes, secs. 49-60; *Van Zandt* v. *Hopkins,* 151 Ill. 248; *Economy Fuse and Mfg. Co.* v. *Standard Electric Mfg. Co.* 359 Ill. 504; 8 C. J. S. p. 479.) The same authorities, and many others, further hold that the cardinal rule of construction is to give effect to the intention of the parties as expressed by the language of the entire instrument. Narrowing our attention to the precise question here involved, we find several courts which have adopted the proposition that a so-called marginal notation fixing a definite due date controls the maturity of a note stated in the body to be payable upon demand. *Whittier* v. *First Nat. Bank,* 73 Colo. 153, 214 Pac. 536; *Bank Comr.* v. *Townsend,* 243 Wis. 329, 10 N. W. 2d 110; *Franklin Saving Inst.* v. *Reed,* 125 Mass. 365; *Nylander* v. *Nylander,* 221 Iowa, 1358, 268 N. W. 7.

Opposed to the foregoing principles is the statement found in numerous cases that "where the body of the note and a marginal memorandum differ as to date of maturity the provision in the body of the instrument is controlling." (*Union State Bank of Minneapolis* v. *Benson,* 38 N. D. 396, 165 N. W. 509; *Rivet & Sons* v. *Durand,* 53 R. I. 48, 163 Atl. 476; *Sharpe* v. *Nat. Bank of Commerce,* (Tex. 1925) 272 S. W. 321; *Bush's Admr.* v. *Bush,* 276 Ky. 126, 122 S. W. 2d 972; 10 C. J. S. Bills and Notes, sec. 44.) Other authorities apparently go so far as to say that words and figures in the margin constitute no part of a note, although we believe a close analysis of such cases will disclose that such marginal memoranda are simply held to be ineffective or immaterial when the body of the note fixes a definite amount or date. (*Fisk* v. *McNeal,* 23 Neb. 726, 37 N. W. 616; *Langdale* v. *People,* 100 Ill. 263; *Merritt* v. *Boyden & Son,* 191 Ill. 136.) And in sup-

port of what might be considered a modification or combination of the above rules of construction there are cases which hold that while a marginal memorandum is not controlling over the body of the note it can be looked to in resolving an ambiguity appearing in the body of the note. (*Corgan* v. *Frew*, 39 Ill. 31; *People* v. *Lewinger*, 252 Ill. 332.) Somewhere in the foregoing rules and principles lies the answer to the case at hand, the solution of which is obviously debatable.

The above-cited case of *Economy Fuse and Mfg. Co. v. Standard Electric Mfg. Co.* 359 Ill. 504, summarizes the primary rule of construction to be followed in Illinois, as follows: "Notations or memoranda placed on the back of a check contemporaneously with the execution of the instrument, with intention of making them a part of the contract for payment of money, constitute as much a part of the instrument as though incorporated in the body thereof. (*Scholbe* v. *Schuchardt*, 292 Ill. 529; *Van Zandt* v. *Hopkins*, 151 id. 248.) In the absence of evidence concerning the intention of the maker in placing such notation on the back of a check it will be presumed to have been made contemporaneously with the instrument and as a part of it and will be given effect as if made in the body thereof." In that case, as well as in *Van Zandt* v. *Hopkins,* 151 Ill. 248, and *Scholbe* v. *Schuchardt,* 292 Ill. 529, there appeared something entirely contrary and foreign to the promise to pay a fixed sum on a definite date, such as a reference to certificates of stock and credits claimed, but this court held in each instance that the memorandum was a part of the instrument and had to be taken into account by all parties dealing with it.

Yet we do not conceive those decisions to be in conflict with the above-cited cases of *Langdale* v. *People,* 100 Ill. 263, and *Merritt* v. *Boyden & Son,* 191 Ill. 136. Thus, in the *Langdale case* it was simply held that the marginal figures of $36 appearing in a school order need not be

included in a copy thereof contained in an indictment. That amount corresponded with the sum payable in the body of the order and thus the marginal figures added nothing to the order and were unnecessary in determining the amount for which it was drawn. Even so, this court recognized that marginal figures might become important when it said: "Where the words used in the body of a note or order for the payment of money are ambiguous, so that there is uncertainty in regard to the true amount that was intended, resort may be had to the figures in the margin of the instrument for the purpose of determining the true amount agree to be paid * * *. They cannot be reverted to to impeach the amount named in the body of the paper, and are never resorted to for any purpose unless there is uncertainty in regard to the amount written in the body of the instrument. Here there was no uncertainty whatever." In the *Merritt case* the facts were similar in that the marginal amount corresponded with the sum payable in the body of the note, both of which had been altered without the consent of the maker. The substance of the holding there was that an alteration or erasure of marginal figures is an immaterial alteration and will not affect the rights of the holder when the body of the instrument is clear as to the amount payable, because, under such circumstances, the marginal memorandum constitutes no material part of a note. Nevertheless, the court recognized that situations such as this might arise and, accordingly, qualified its seemingly broad statements by saying: "It is true that, under certain circumstances, marginal figures may be used to remove doubt and ambiguity in an instrument."

As to the case of *Fisk* v. *McNeal,* 23 Neb. 726, 37 N. W. 616, so strongly relied upon by the Appellate Court, there is this material distinction: The body of each note there involved provided a fixed due date, *i.e.* "10 days after date." Thus, the court perhaps correctly held that the

marginal memorandum fixing a later due date could not prevail since the two were in direct conflict and could not be reconciled. In *Danforth* v. *Sterman,* 165 Iowa, 323, 145 N. W. 485, cited by the Appellate Court, the full report of that case shows that the due date of May 15, 1911, inserted in the margin, was admittedly done through an error, the person who made it testifying that he had in mind the date of delivery of a deed between the same parties. It follows that said decision is not applicable. In *Sharpe* v. *Nat. Bank of Commerce,* 272 S. W. 321, and *Union State Bank of Minneapolis* v. *Benson,* 38 N. D. 396, 165 N. W. 509, further relied upon by the Appellate Court, the facts were that a fixed and unambiguous due date appeared in the body of the note sued on while marginal notations indicated later maturities. Under those circumstances, we can agree that the date fixed in the body of the instrument must control. The distinction was clearly pointed out in the fairly recent Iowa case of *Nylander* v. *Nylander,* 268 N. W. 7, involving a note payable "after date" where the court referred to most of the cases just above cited but then said: "These cases hold that, if there is a fixed due date in the body of the note, a different due date appearing on the margin or bottom of the note cannot control the fixed date. They do not hold that a marginal statement on a bill or note does not constitute a part thereof, and are not applicable here, for the reason that in this case there is not a due date fixed in the body of the instrument and a different due date below or on the margin of the note."

Applying the foregoing principles to the facts of this case, we must first observe that it would be a most extraordinary thing if a person should undertake to repay money before he had, in fact, borrowed it or signed an obligation to repay it. Yet, that would be the effect of construing this note to become payable on March 1, 1931. The strained effect of such a construction is even more apparent when

we consider that the parties struck from the printed portion of the note the word "after," because it would have been much more simple to leave the word unaltered and simply prefix the phrase "On or" had the parties intended to make the note collectible at any time after the date of issuance. In other words, if the parties had intended to make the note payable on demand or at any time after the date of execution, simple words to that effect could readily have been inserted in the blank provided therefor in the note. To avoid such a strained and abnormal meaning we naturally look elsewhere in the note and find what appears to be a clear explanation of the intention of the parties. That is, referring to the left-hand corner of the note we find the due date to be "Mar. 1, 1939." Reading this with the "On or Before" provision makes the note quite intelligible and eliminates the unnatural result which would follow from making it payable even before it was executed. We recognize that the words "On or Before" could possibly have referred to the date of March 1, 1931. However, we repeat that such a reference would result in a paradox which we cannot believe the parties intended.

Standing alone, the payment provision in the body of the note is not only a poor sentence grammatically, but it is ambiguous and lacking in certainty. Reference to the date of "Mar. 1, 1939," however, clarifies the apparent intention of the parties to permit payment of the note, without penalty, before the date on which they considered that it finally matured. Furthermore, the date is filled in on a blank of the printed form which appears to be as much a part of the note as any other of its provisions. The line on which that date was inserted is even with the second signature line and is entirely within the black borderline encompassing all component parts of the note. Such being the case, it seems to us to be giving appellee the benefit of every doubt even to consider it a marginal memorandum. At any event, the due date of March 1, 1939, is present in

the note, and we see no more license for excluding consideration of it than if it said "This note is given to secure 5000 shares of Regina stock" as was the case in *Scholbe* v. *Schuchardt*, 292 Ill. 529. If we are to give effect to the very words written by the parties to this note rather than remake it at this late date, we see no other course than to resolve the ambiguity appearing in the body of the instrument by giving full force and effect to the stated due date of "Mar. 1, 1939." The original parties to the note in question apparently drafted it themselves without the assistance of counsel or others who might have some particular knowledge of negotiable instruments, and this will continue to be the circumstance under which many notes and checks are issued. To adopt some hard and fast rule entirely nullifying the effect of so-called marginal memorandum would too often defeat the ends of justice and the intention of the parties who will naturally assume that every blank in the note form is to be filled.

The foregoing rule of construction appears to us to be the best and the one supported by a greater weight of opinion, including ours in the somewhat analogous cases of *Corgan* v. *Frew*, 39 Ill. 31, and *People* v. *Lewinger*, 252 Ill. 332. (See annotation in 13 A. L. R. 251.) It is also in line with section 17 of the Negotiable Instrument Law which provides: "Where the language of the instrument is ambiguous, or there are omissions therein, the following rules of construction apply: 1. Where the sum payable is expressed in words and also in figures and there is a discrepancy between the two, the sum denoted by the words is the sum payable; but if the words are ambiguous or uncertain, reference may be had to the figures to fix the amount." Ill. Rev. Stat. 1943, chap. 98, par. 37.

Having found that the note, in fact, matured on March 1, 1939, we, of course, have no problem of *laches* or Statute of Limitations because the claim in question was filed well within 10 years after such maturity.

From what we have stated in this opinion, it follows that Van Zele was a holder in due course, and the orders in the Feldman bankruptcy can have no adverse effect on him, as he was not a party thereto. While it is true that he knew of the bankruptcy, yet that did not occur until August, 1933, whereas he became a holder in due course not later than January 7, 1933. The reason for the referee in bankruptcy holding this note to be an asset of James C. Feldman is obscure but with the family relationship of the maker, payee, and endorsee of this note, there are any number of explanations which would rationalize the situation. The note was not scheduled as an asset and since Van Zele appeared only as a witness he is not bound by such a collateral proceeding. (*In re Estate of Rackliffe,* 366 Ill. 22.) However, as intimated before, appellant can not be allowed the full amount of $4362.75 as claimed. Section 27 of the Negotiable Instrument Law provides: "Whether the holder has a lien on the instrument, arising either from contract or by implication of law, he is deemed a holder for value to the extent of his lien." Thus, it is apparent that the claim in question can be allowed only to the extent of the unpaid balance, if any, now due upon the $1500 note, plus interest, which Hazel Feldman delivered to Leon Van Zele, January 7, 1933, and which was collaterally secured by the note in question as indicated by the second endorsement.

Therefore, the judgment in this case is reversed and the cause remanded for further proceedings consistent with the opinion herein.

*Reversed and remanded, with directions.*

SMITH, C.J., and MURPHY, J., dissenting.